**Susan M. KARY, Individually, and Susan M. Kary as the Administratrix of the Estate of Alfred Kary, Deceased, Plaintiff and Appellant,**

v.

**Thomas ARNOLD et al., Defendants and Respondents.**

**No. 11510.**

Supreme Court of South Dakota.

Reassigned Dec. 30, 1976.

Decided April 15, 1977.

Rehearing Denied May 24, 1977.

---

1. II Wigmore, Evidence § 285 at 162 (1940 ed.).

Wally Eklund, of Johnson, Johnson & Ek-
lund, Gregory, John J. Simpson, Winner, for
plaintiff and appellant.

Dudley R. Herman, of Herman &
Wernke, Gregory, John C. Coupland, Valen-
tine, Neb., for defendants and respondents.

WOLLMAN, Justice (on reassignment).

This is an appeal from a judgment that
dismissed appellant's suit for rescission of a
contract for the sale of certain real estate

and for damages against respondent bank for delivering deeds out of escrow to respondents Arnolds, and which awarded damages to the Arnolds on their counterclaim and adjudged them to be the legal owners of the land in question. We affirm.

On June 9, 1969, Alfred Kary and his wife Susan, appellant herein, entered into a contract for the sale of approximately 1200 acres of land in Mellette County and Todd County, South Dakota, to Thomas F. Arnold and Edward M. Arnold. The contract stated the purchase price to be $72,000, with a down payment of $20,000. The contract further provided that immediately upon execution thereof the Arnolds were to make application to the Rosebud Sioux Tribe to exchange the property covered by the contract for other land in Todd County owned by the tribe, a procedure that the contract acknowledged would require an appraisal of the Kary property. If the appraisal exceeded the $72,000 purchase price stated in the contract, the Arnolds would be required to pay the Karys the amount by which the appraisal exceeded that figure, up to an appraised value of $90,000. The payment of this additional consideration was to be made when the trade was finally completed, and the parties agreed to do all in their power to expedite the exchange. The contract named respondent bank as escrow agent. Finally, the contract recognized that the parties had executed a contemporaneous agreement that gave the Arnolds the option of purchasing the Kary land for $90,000. In the words of the contract, " * * * This option is executed solely to facilitate and expedite the exchange application with the Rosebud Sioux Tribe and is not intended to and does not modify, amend or in any way change or affect any of the terms, conditions or provisions of this agreement."

The Arnolds were to have 90 days in which to exercise the option.

On August 27, 1969, Alfred Kary and Thomas F. Arnold signed an agreement that extended the June 9 option until No-

vember 9, 1969, and modified the June 9 contract by providing that the Arnolds were to assume a mortgage on the Kary land and pay to the escrow agent the excess over the balance due on the mortgage. The agreement further provided:

"The parties agree that the amount of the appraisal by the B.I.A. shall be proved by delivery of a certified copy thereof to the Escrow Agent. Upon completion of the trade between Arnolds and the Rosebud Sioux Tribe, the Buyers shall be obligated to pay Sellers the difference between said appraisal and $72,000.00, but said sum shall not exceed $18,000.00. The parties agree that should the appraisal be $72,000.00 or less, Buyers shall not be obligated to make any additional payment to Sellers."

On November 5, 1969, the proposed land exchange between the Arnolds and the Rosebud Sioux Tribe was approved by the executive committee of the tribal council. Attached to the resolution approving the land exchange was an exhibit that set forth the appraised valuation of the land to be exchanged by the Arnolds, including those tracts covered by the contract between the Karys and the Arnolds. The Kary land was shown to have a total appraised valuation of $85,000. The resolution of the executive committee was submitted to the Area Director of the Bureau of Indian Affairs in Aberdeen, South Dakota, who by letter dated November 26, 1969, informed the superintendent of the Rosebud Agency of further procedures that were to be carried out in order to effectuate the land exchange. Apparently the Arnolds were never advised of the steps to be taken to comply with the Area Director's letter.

On November 19, 1969, Alfred Kary conveyed to William Lee Kary, his son, a quarter section of the land covered by the contract with the Arnolds.*

On December 1, 1969, a new tribal administration took office. Some of the new tribal council members disapproved of certain aspects of the land exchange; consequently,

---

* William Lee Kary was not named as a party in these proceedings, and we express no opinion

concerning his interest in any of the land in question.

the exchange was not completed at that time.

Alfred Kary died on March 9, 1970. In April of 1970, appellant advised a member of the tribal council that she did not want the exchange to go through, and as far as the record reveals the exchange has never been carried out.

Appellant's suit for rescission was predicated on the theory that the consideration for the contract had failed because the exchange between the Rosebud Sioux Tribe and the Arnolds had not been completed. In their answer to appellant's amended complaint, the Arnolds alleged their willingness to pay appellant the balance of the purchase price on the contract, based upon the appraised valuation of $85,000.

The trial court found that appellant was principally responsible for preventing the exchange from being completed. The court also found that the November 19, 1969, conveyance of the quarter section of land by Alfred Kary to his son was made with the purpose of either delaying or preventing the exchange. The court further found that had the land exchange between the Arnolds and the Rosebud Sioux Tribe been carried out, the Karys would have been entitled to an additional $13,000 payment based upon the $85,000 appraisal of the Kary land. The court found that the Karys had unlawfully withheld possession of the premises from the Arnolds and had collected certain federal crop payments that should have been paid to the Arnolds. After computing the amounts due the Arnolds for these crop payments and the reasonable rental value of the land during the period that the Arnolds had been deprived of possession, and offsetting those amounts against the $13,000 balance due on the contract and the amounts due for certain real estate taxes paid by the Karys that should have been paid by the Arnolds, the trial court concluded that appellant owed the Arnolds some $11,105.23.

■ We conclude that the trial court's findings of fact are supported by the evidence and are not clearly erroneous. *In re*

*Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455.

■ Likewise, we conclude that the trial court was correct in holding that appellant was not entitled to rescind the contract under the provisions of SDCL 53–11–2. If anything, appellant has received more than she was entitled to under the June 9, 1969, contract. The most that she could have received under the contract was $90,000, assuming the appraisal had been fixed at that figure. Even if we were to accept appellant's contention that the Arnolds had not taken any action to facilitate or expedite the land exchange, by in effect electing to proceed as though the appraisal and exchange had occurred, the Arnolds tendered everything in the way of performance that appellant was entitled to. Thus, the fact that the exchange had not yet been completed at the time of trial did not entitle appellant to rescind the contract, for as we said in *Dusek v. Reese*, 80 S.D. 96, 119 N.W.2d 656:

" * * * rescission of a contract is not generally permitted 'for a casual, technical, or unimportant breach or failure of performance, but only for a breach so substantial as to tend to defeat the very object of the contract.' 1 Bl.Resc. (2d Ed.) § 197, p. 550. The same principle applies to rescission based upon partial failure of consideration under our statute. Such a breach must also be substantial or relate to a material part of the contract. * * * "

The only possible interest that the Karys could have had in the execution of the land exchange was the effect the appraisal might have in increasing the sale price of the land from $72,000 to $90,000. Contrary to appellant's assertion, the trial court did not rewrite the contract, for by virtue of the trial court's decision appellant will receive the benefit of the appraisal and exchange provisions of the contract.

■ Appellant has challenged the validity of the appraisal. Respondent Edward M. Arnold testified, however, that he had spoken to Alfred Kary about the appraisal in December of 1969 and that Mr. Kary had

stated that the appraisal was quite close to what he had expected it to be. In addition, the Bureau of Indian Affairs realty officer who had assisted the Rosebud Sioux Tribe with the proposed exchange testified concerning the manner in which the appraisal was made. The trial court was apparently satisfied from this evidence that the appraisal was bona fide, and on the basis of the record we cannot say that such finding was clearly erroneous. The failure of the Arnolds to deliver a certified copy of the appraisal to the escrow agent was at the most an immaterial breach of the agreement. *Dusek v. Reese,* supra.

Without detailing the evidence further, we are satisfied that the trial court cut through to the heart of the controversy and arrived at an equitable adjustment of all of the matters in dispute. *Dusek v. Reese,* supra.

From what we have said above, it follows that the trial court was correct in dismissing appellant's complaint against respondent bank.

The judgment is affirmed.

All the Justices concur.

WINANS, Retired Justice, sitting for PORTER, J., disqualified.