1998 SD 110

THUNDERSTIK LODGE, INC., Harold Becker, William Becker, Charles Ross, & Edwin S. Gage, Owners and Lessees, Plaintiffs and Appellees,

v.

Alvin & Elva REUER, Defendants and Appellants,

and LeRoy Reuer, Defendant.

Nos. 20313, 20327.

Supreme Court of South Dakota.

Considered on Briefs Sept. 16, 1998.

Decided Nov. 4, 1998.

Steven R. Smith of Andera and Smith, Chamberlain, for plaintiffs and appellees.

Rick Johnson of Johnson, Eklund, Nicholson, Peterson & Fox, Gregory, for defendants and appellants.

GILBERTSON, Justice.

[¶ 1.] This action arises out of a landlord/tenant dispute. Alvin and Elva Reuer filed a forced entry and detainer suit against Thunderstik Lodge Inc., (Thunderstik). Thunderstik also filed a separate suit against Alvin and Elva Reuer. Pursuant to the lease agreement, the Fourth Judicial Circuit, Brule County, compelled arbitration. The court later adopted the arbitration panel's decision and entered judgment. The Reuers appealed and Thunderstik filed a notice of review. We affirm.

**FACTS AND PROCEDURE**

[¶ 2.] Thunderstik is a commercial hunting establishment located near Chamberlain, South Dakota. Guests at Thunderstik pay approximately $1,800.00 per person for a three-day hunting trip. This price includes private suites, gourmet food, complimentary beverages, cleaning and packaging of all game, ammunition, hunting guides and trained dogs. Thunderstik is open during pheasant, duck and goose hunting seasons.

[¶ 3.] Thunderstik, Alvin Reuer, Elva Reuer (husband and wife) and their son LeRoy and his wife Kathleen (the Reuers) entered into a lease on May 6, 1988, for the use of the Reuers' property in Brule County, South Dakota. The signing of this lease followed extensive negotiations between the parties and their respective attorneys. The lease term was for ten (10) years and Thunderstik had the option to renew for two (2) additional terms.

[¶ 4.] Several clauses in the lease are relevant to this matter. First, the lease provided the "premises may be used by [Thunderstik] for any *legal* purpose, including by way of description and not limitation, agricultural, hunting and fishing, and any other related purpose." (Emphasis added). Second, the lease contained a clause that gave the Reuers a right of re-entry if Thunderstik failed to keep any of the covenants or agreements within the lease.

> The Lessee agrees that if it shall fail to keep any of the covenants and agreements contained in this lease ... then ... the Lessor may re-enter the premises and take absolute possession of the premises, and may lease or sublet the premises at such terms as the Lessor may elect.... Lessor shall be obligated to mitigate any damages. *Lessor's rights herein shall not be enforceable by Lessor until Lessor has given Lessee written notice of the event which allows Lessor to re-enter the premises. Lessee shall have sixty (60) days from receipt of written notice to remedy the event complained of....*

(Emphasis added). Third, the lease provided "[a]ny differences between the parties as to their several rights and obligations under this lease that are not settled by mutual agreement after thorough discussion shall be submitted for arbitration to a committee of three disinterested persons...."

[¶ 5.] In 1996, the parties' relationship began to deteriorate. LeRoy was terminated from his job at Thunderstik.[1] The Reuers and Thunderstik employees were involved in several confrontations. Alvin Reuer began to habitually call the State Department of Game, Fish and Parks, to report alleged illegal hunting on the leased land. Before the opening of the waterfowl season, Alvin Reuer observed corn rows knocked down in the center of the corn field on the leased

---

1. Thunderstik claims LeRoy had been stealing from the lodge. This was its reason for his termination.

property.[2] Rather than invoking the lease provision to settle disputes by mutual agreement after thorough discussion, Reuer again called the Game, Fish and Parks Department to report a potentially baited field.

[¶ 6.] On October 15, 1996, Thunderstik Lodge and three of its employees were charged by federal officers with violating the misdemeanor provision of the Migratory Bird Treaty Act (MBTA). More specifically, they were charged with aiding and abetting the taking of migratory birds over a baited field.[3] This was the same field where Alvin had observed the fallen corn rows. Thunderstik and its employees plead guilty to the charges, paid the fine and immediately corrected the problem to the game warden's satisfaction.[4]

[¶ 7.] In February 1997, Reuers filed a forcible entry and detainer action against Thunderstik pursuant to SDCL ch. 21–16. The Reuers claimed Thunderstik breached the "legal purpose" clause of the lease by conducting illegal hunting activities on the leased land. On March 31, 1997, the Reuers served a notice to quit on Thunderstik. On April 3, 1997, Thunderstik filed suit in circuit court against the Reuers. In its complaint Thunderstik alleged breach of contract, slander, tortious interference with contract, breach of the covenant of quiet enjoyment and conversion. Thunderstik also requested declaratory judgment relief. On May 28, 1997, the judge issued an order directing specific performance to compel the parties to submit their disputes to arbitration.

[¶ 8.] The arbitration panel (panel) issued its memorandum opinion and award on August 1, 1997. Two of the three panelists agreed and one panelist dissented. The entire panel found Thunderstik did breach the "legal purpose" provision of the lease by violating the MBTA. However, the majority found the breach was "minor" and did not justify a forfeiture of the leasehold. The panel also found the right of re-entry did not vest in the Reuers. This finding was premised on the express provision in the contract that the right to re-entry "shall not be enforceable" until written notice of the breach is given and Thunderstik is allowed sixty (60) days to remedy the breach. The panel granted Thunderstik's motion for declaratory judgment, it found the lease was valid and enforceable, allowed Thunderstik to exercise its option to renew for an additional ten years and concluded the Reuers' forcible entry and detainer action should be dismissed on the merits and with prejudice. It expressed no opinion as to the merits of Thunderstik's remaining claims.

[¶ 9.] The circuit court confirmed the arbitration award and issued a judgment adopting the award. The court also ruled that Thunderstik would remain in possession of the original leased lands, be allowed to exercise its option to renew and be given quiet enjoyment of the premises.

[¶ 10.] On December 5, 1997, the Reuers filed a motion for summary judgment contesting the validity of the lease agreement. At this time, the circuit court has not disposed of this motion or the other unresolved claims in Thunderstik's suit.

[¶ 11.] The Reuers appeal the arbitration award as confirmed by the circuit court.[5] They raise the following issues:

2. The rows were knocked over by Thunderstik's employees as they were driving to and from the goose pits readying them for the upcoming hunting season. Thunderstik maintains the act was not intentional baiting.

3. The Migratory Bird Treaty Act, 16 U.S.C. §§ 703–711, makes it a misdemeanor to hunt migratory birds over a "baited" field. "Baiting" is defined as

placing, exposing, depositing, distributing, or scattering of shelled, shucked, or unshucked corn ... so as to constitute for such birds a lure, attraction or enticement to, on, or over any areas where hunters are attempting to take them; and "baited area" means any area

where ... corn ... capable of luring, attracting, or enticing such birds is directly or indirectly placed, exposed, deposited, distributed, or scattered....

50 C.F.R. § 20.21(i).

4. Thunderstik conceded it pled guilty and paid the fine on the advice of its attorney who claimed a successful challenge was unlikely and the cost would be more than paying the fine.

5. The Reuers file this appeal to ensure they do not waive any rights or objections relative to the arbitration orders. In their brief, they requested this Court hold its ruling pending a decision by the trial court on the summary judgment motion

1.  Whether a lease provision calling for arbitration of differences, limits the lessor to that remedy, or may the lessor instead use forcible entry and detainer relief.
2.  Whether the act of baiting a field, in violation of the MBTA, is a material breach of the lease that allows the Reuers to exercise their right of re-entry.

## STANDARD OF REVIEW

[¶ 12.] On appeal, this Court can read a contract itself without any presumption in favor of the trial court's determination. *Spring Brook Acres Water Users v. George,* 505 N.W.2d 778, 780 (S.D.1993) (citing *Baker v. Wilburn,* 456 N.W.2d 304, 306 (S.D.1990)). Contract interpretation is a question of law. *Kobbeman v. Oleson,* 1998 SD 20, ¶ 4, 574 N.W.2d 633, 635 (citation omitted). As such we review the issue de novo. *Lane v. Travelers Indem. Co.,* 1997 SD 58, ¶ 12, 563 N.W.2d 423, 425 (citing *De Smet Ins. Co. v. Gibson,* 1996 SD 102, ¶ 5, 552 N.W.2d 98, 99). Arbitration awards are presumptively correct. *Azcon Const. Co. v. Golden Hills Resort,* 498 N.W.2d 630, 635 (S.D.1993) (citing *Western Casualty & Surety Co. v. Gridley,* 362 N.W.2d 100, 102 (S.D. 1985)). The party alleging error in the award has the burden to show by the record that an error has occurred. *Azcon,* 498 N.W.2d at 635 (citation omitted). Judicial review of an arbitration award is very narrow. *Id.*

## ANALYSIS AND DECISION

[¶ 13.] **1. Whether a lease provision calling for arbitration of differences, limits the lessor to that remedy or may the lessor instead use forcible entry and detainer relief.**

[¶ 14.] We have consistently favored the resolution of disputes by arbitration. *See*

made in Thunderstik v. Reuer. Thunderstik believes the more appropriate disposition of this case would be a summary affirmance without opinion. We find no justification to stay this case.

*Tjeerdsma v. Global Steel Bldgs., Inc.,* 466 N.W.2d 643, 645 (S.D.1991); *City of Hot Springs v. Gunderson's Inc.,* 322 N.W.2d 8 (S.D.1982). The purpose of arbitrating disputes is to provide a relatively quick and inexpensive resolution without the cost and delay that may come with legal proceedings. *Azcon,* 498 N.W.2d at 633 (citation omitted). It is an overriding policy that arbitration will be favored, when provided for in a contract provision, as a means to the resolution of disputes. *See Tjeerdsma,* 466 N.W.2d at 645.

[¶ 15.] Moreover, South Dakota has adopted the Uniform Arbitration Act. *See* SDCL ch. 21–25A. SDCL 21–25A–1 states:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is *valid, enforceable and irrevocable,* save upon such grounds as exist at law or in equity for the revocation of any contract.

(Emphasis added). If any party to an agreement providing for arbitration had any doubt whether the case should be resolved by traditional judicial means or by arbitration, arbitration will control. *Gunderson's,* 322 N.W.2d at 10.

[¶ 16.] The lease in question called for arbitration in the event "differences between the parties" arose. The Reuers allege there were no "differences between the parties," therefore, the arbitration clause did not control and they were free to proceed with a forcible entry and detainer action under SDCL 21–16–1(7). They claim the only "difference" between the parties was whether Thunderstik was convicted of a crime. Since Thunderstik pled guilty to the federal charges, it admitted the illegal act.[6] Therefore, the Reuers' reason that no issue is in dispute and there was no need for arbitration. However, when the circuit court judge compelled the parties to arbitration, there

6.  We have held "in civil litigation involving [a matter] which gave rise to a criminal charge to which the defendant pleaded guilty, the plea, while not conclusive as substantive evidence, is an admission against interest." *Olson v. Judd,* 534 N.W.2d 850, 853 (S.D.1995) (citation omitted).

were several issues in dispute. Considering South Dakota's policy of encouraging arbitration and the contract language, the trial court did not err in its order to compel arbitration.

[¶ 17.] Furthermore, the parties bargained for resolution of disputes by arbitration. Contract negotiations for this lease involved extensive review by both parties and their respective counsel. We have said "[a]s a general principle, one who accepts a written contract is conclusively presumed to know its contents and to assent to them, in the absence of fraud, misrepresentation, or other wrongful act by another contracting party." *Flynn v. Lockhart*, 526 N.W.2d 743, 746 (S.D. 1995) (quoting 17A Am.Jur.2d Contracts § 224 (1991)). The Reuers did not plead fraud, misrepresentation or wrongful act in the contract. Therefore, we presume they knew the contract contained an arbitration clause and they intended to be bound by this clause.

[¶ 18.] We read this contract as requiring the parties to arbitrate this dispute. As all other remedies are foreclosed, the Reuers cannot proceed with forcible entry and detainer under SDCL 21–16–1(7).[7] Based upon the foregoing analysis, we affirm.

[¶ 19.] **2. Whether the act of baiting a field, in violation of the MBTA, is a material breach of the lease that allows the Reuers to exercise their right of re-entry.**

[¶ 20.] The Reuers claim Thunderstik's conviction under the MBTA violates the "legal purpose" covenant of the lease. Moreover, violation of this covenant is a

breach of the lease and should allow the Reuers to terminate the agreement and exercise their right of re-entry. When submitted to the three-person arbitration panel, all agreed the conviction was a breach of the "legal purpose" covenant.[8] However, the panel did not agree on whether the breach was sufficient to allow forfeiture. Two panelists found to forfeit the leasehold in this instance would be unduly harsh. This decision was based on the cure provision in the right of re-entry clause. Since Thunderstik had cured its violation within sixty (60) days, termination of the lease was not called for either in equity or law. The circuit court adopted the majority decision of the panel.

[¶ 21.] The Reuers base their argument in this appeal upon the rationale of the dissenting panelist. In his dissent, he noted the violation of the MBTA was an illegal use of the premises that should allow the Reuers to terminate the lease. He cited SDCL 43–32–18 as controlling.

> A landlord may terminate a lease and reclaim the premises before the end of the agreed term:
>
> > (1) When the tenant uses or permits a use of the premises *in a manner contrary* to the lease agreement
>
> . . . .

(Emphasis added). The dissenting panelist found Thunderstik used the premises in a manner contrary to the lease agreement by using it for an illegal purpose—"baiting." He also took issue with the majority justifying its decision on the right of re-entry provision of the lease which requires a sixty (60) day notice and the right to cure.

---

7. There is another statutory limitation upon the use of a forcible entry and detainer action. Under SDCL 21–16–4 a forcible entry and detainer action may not be brought in connection with any other cause of actions except for rents and profits or damages. A separate action is required for any other claims.

8. Upon appeal to this Court, Thunderstik makes a passing mention that there was no breach of the "legal purpose" covenant, let alone a material breach. We do not address this argument as it is not necessary to a resolution of the appeal and is not supported with appropriate authority. However, we do acknowledge that not all violations of the law equate with a violation of the "legal purpose" covenant of this lease just be-

cause the act occurs on the leasehold. For example, should Thunderstik unknowingly allow an underage driver to drive one of its vehicles or inadvertently violate governmental crop growing limitations required to participate in government agricultural programs, these acts, while illegal and while occurring on the leasehold, are not of such significance to violate the "legal purpose" of the lease. Factors such as the seriousness of the act, whether it was committed intentionally or otherwise, and the number of times it was committed obviously are relevant to a determination of whether the clause was violated or not violated. These factors may also come into play when considering the materiality of the breach.

The problem with that theory is, how do you remedy a crime? You can't undo a crime. You can cease and desist from further crimes. But when the crime was committed (baiting) the illegal use was done and completed. The guilty pleas were merely admissions of the illegal baiting.

(Arbitration Memorandum Opinion and Award, Thunderstik v. Reuer, Nos., 97–39, 97–35, 17 (issued August 1, 1997) (Wuest, Arb.))

[¶ 22.] The dissenting panelist relies on two South Dakota cases that upheld forfeiture of a lease based on illegal acts causing breach. *Skillman v. Lynch*, 74 S.D. 212, 50 N.W.2d 641 (1951); *American Legion Holding Corp. v. Hurowitz*, 72 S.D. 89, 30 N.W.2d 9 (1947). In *Skillman*, the lease had a clause expressly prohibiting gambling on the premises. *Skillman*, 74 S.D. at 213-4, 50 N.W.2d at 642. When the lessee was charged with gambling violations, the lessor refused to allow him to exercise his option to renew the lease. *Id.*, at 214, 50 N.W.2d at 642. The lessor then exercised his right of re-entry. *Id.* This Court upheld the circuit court's order allowing the lessor to terminate the lease. *Id.* at 217, 50 N.W.2d at 644.

[¶ 23.] In *American Legion*, the lease at issue provided that the lessee may not use the premises for any unlawful business. *American Legion*, 72 S.D. at 90, 30 N.W.2d at 10. Upon a breach of the terms, the lessor could, without notice, demand the tenant quit the premises. *Id.* The Hurowitzs, the lessees, were operating a grocery store under the name of Stop 'N Shop. *Id.*, at 91, 30 N.W.2d at 10. They had not filed the statement required under SDC 49.08 for anyone operating a business under a trade name. *Id.* This Court held this act fell into the unlawful business category and it was a continuous breach since every day they operated the store they committed a new breach. *Id.*, at 93, 30 N.W.2d at 11. This Court allowed forfeiture of the leasehold. *Id.*

[¶ 24.] In neither *Skillman* nor *American Legion* did this Court consider the materiality of the breach. These cases are not in accord with *Dusek v. Reese*, 80 S.D. 96, 119 N.W.2d 656 (1963) or the current state of our law. *See Talley v. Talley*, 1997 SD 88, 566 N.W.2d 846; *BankWest, N.A. v. Groseclose*, 535 N.W.2d 860 (S.D.1995); *S & S Trucking v. Whitewood Motors, Inc.*, 346 N.W.2d 297 (S.D.1984). In *Dusek*, we stated that a breach must be related to a "material" part of the contract for rescission to apply. 80 S.D. at 102, 119 N.W.2d at 660. As such, we expressly overrule *Skillman* and *American Legion*. In regard to breach, there is no basis to treat real estate leases any differently than other types of contracts. We hold forfeiture will only result from a material breach of the lease.

[¶ 25.] As a lease is a contract we will follow the law of contract in regard to breach. "[R]escission of a contract is not generally permitted for a casual, technical, or unimportant breach ..., but only for a breach so substantial as to tend to defeat the very object of the contract." *Dusek*, 80 S.D. at 102, 119 N.W.2d at 660. This Court has held that a breach must be "substantial" and relate to a "material" aspect of the contract to warrant rescission. *S & S Trucking*, 346 N.W.2d at 300. A "material breach" would defeat "the very object of the contract." *Kary v. Arnold*, 252 N.W.2d 326, 329 (S.D. 1977) (citation omitted).

[¶ 26.] For the Reuers to proceed with the forfeiture, Thunderstik must have materially breached the lease. To do otherwise places in jeopardy the benefits of the bargain of the contacting parties. The larger the contract the more unfair it becomes not to recognize a materiality requirement as a basis to set the contract aside. In many current technical and lengthy contracts, if one looks hard enough one can probably find some type of technical breach. However, it is not the purpose of the contract to turn it into a game of "gotcha."

[¶ 27.] In our opinion the violation of the MBTA was not a material breach. Breach of the "legal purpose" clause was only a minor part of the entire contract. The breach of this clause only allows the Reuers to demand a cure after the required notice was given. We do not feel Thunderstik's illegal act of "baiting" raises to the level of defeating the very object of the contract.

[¶ 28.] Furthermore, under the Reuers right of re-entry provision, Thunderstik was to be allowed opportunity for notice and to cure the breach. Alvin did not notify Thunderstik when he noticed the possible baiting violation. In the time it took Alvin to call Game, Fish and Parks he could have called Thunderstik.

[¶ 29.] Along with notice, Thunderstik had a right to cure the breach within sixty (60) days of notice before the right of re-entry would vest in the Reuers. Within days after the citations were issued, Thunderstik remedied the situation to the game warden's satisfaction.

[¶ 30.] The Reuers claim, following the analysis of the dissenting panelist, that it is impossible to remedy a criminal conviction. However, it is the *act* of baiting that caused the breach. The criminal conviction is only a collateral consequence of the act. It is the act of baiting that must be remedied and it was remedied within the sixty (60) day period.

[¶ 31.] We have said, "[i]t is a standing rule that a forfeiture shall not bind, when a thing may be done afterward...." *Barnes v. Clement*, 12 S.D. 270, 277, 81 N.W. 301, 303 (S.D.1899). The general rule is that the law abhors a forfeiture. *BankWest*, 535 N.W.2d at 864 (citing *Ford v. Hofer*, 79 S.D. 257, 261, 111 N.W.2d 214, 216 (1961)). "Forfeitures are considered as odious in the law, and are not favored by the courts. Courts of equity will seize upon slight circumstances to relieve a party therefrom." *Id.* (citation omitted). In this case it would be grossly unjust to allow a forfeiture. Thunderstik has put a great deal of time and effort into the success of its lodge. Allowing the Reuers to re-enter the premises would work an extreme hardship on Thunderstik. This Court will not allow forfeiture for such a minor breach especially when the breach has been cured.

[¶ 32.] We affirm.

[¶ 33.] SABERS and KONENKAMP, JJ., concur.

[¶ 34.] MILLER, C.J., and AMUNDSON, J., concur in result.

MILLER, Chief Justice (concurring in result).

[¶ 35.] Although I agree with the bottom line of the majority opinion, I write specially to express my disagreement with the holding of the arbitration panel, the circuit court, and the majority, as it relates to the claimed violation of the lease. I am of the view that the one incident of baiting did NOT amount to a violation or breach of the "legal purpose" provision of the lease. The stated purpose of the lease was for both agricultural and hunting uses; both of those are clearly legal purposes. The fact that on one occasion there was a misdemeanor baiting incident, does not amount to a violation of the legal purposes of the lease.

[¶ 36.] Legal precedent fully supports my position. Restatement (Second) of Property § 12.5 cmt. c (1976) states:

> The leased property is not used for an illegal purpose merely because an illegal act is committed on the leased property. The use of the leased property for an illegal purpose connotes continuing illegal conduct being carried on with the leased property being used as the base of operations. The necessary continuity may be present though the illegal action may take place only periodically.

*See also Murphy v. Traynor*, 110 Colo. 466, 135 P.2d 230, 232 (1943); *FCA Properties v. Hudson Oil Co. of the United States, Inc.*, 35 Mich.App. 79, 192 N.W.2d 390 (1971); *Mobil Oil Corp. v. Burdo*, 69 Misc.2d 153, 329 N.Y.S.2d 742, 749 (1972) (citation omitted); *190 Stanton Inc. v. Santiago*, 60 Misc.2d 224, 302 N.Y.S.2d 693, 695 (1969) (citation omitted).

[¶ 37.] Additionally, while I may disagree with this Court's earlier holdings in *American Legion* and *Skillman*, I see no need to specifically overrule them, as the majority does in ¶ 24.

[¶ 38.] I am authorized to state that Justice AMUNDSON joins in this special writing.