2002 SD 82

**ROSSI FINE JEWELERS, INC., d/b/a Nature's 10 Jewelers, Dubois Mall, Plaintiff and Appellant,**

v.

**Brian GUNDERSON, Defendant and Appellee,**

and

Nature's 10 Jewelers, Inc., a South Dakota Corporation; Mylan Ventures, Ltd., a North Dakota Corporation; Mike Alvano; Frank Barnes; Kirk Gardner; Jerry Haack; Barney Schumacher; and Randy Slaybaugh, Defendants.

No. 21961.

Supreme Court of South Dakota.

Argued on Jan. 10, 2002.

Decided July 10, 2002.

Ronald A. Parsons, Jr., Steven M. Johnson of Johnson, Heidepriem, Miner, Marlow and Janklow, Sioux Falls, South Dakota, Matthew S. McCaulley of Hynes & McCaulley, Sioux Falls, South Dakota, Attorneys for plaintiff and appellant.

Tina Hodne of Berenstein, Moore, Berenstein, Heffernan & Moeller, Sioux City, Iowa, Attorney for defendant and appellee.

KONENKAMP, Justice.

[¶ 1.]  In this appeal, we decide whether a contract clause requires compulsory arbitration.  The trial court ruled that federal law mandates arbitration.  We affirm.

### Background

[¶ 2.]  Defendant Nature's 10, Inc., was incorporated in South Dakota in 1995.  In 1996, defendant Mylan Ventures, Ltd., a Wyoming corporation, purchased Nature's 10.  The remaining defendants, Mike Alvano, Frank Barnes, Kirk Gardner, Brian Gunderson, Jerry Haack, Barney Schumacher, and Randy Slaybaugh, were either directors or officers of Nature's 10 or Mylan during the time of the transactions described here.  Some of the individual defendants made an appearance in circuit court, but only Brian Gunderson responded in this appeal.

[¶ 3.]  Nature's 10 held itself out as a franchisor offering to potential franchisees an opportunity to participate in retail sales of various articles of jewelry at discounted prices.  Nature's 10 stores were advertised as marketing diamonds obtained from the franchisor's own mines, cut in its own facility, and offered at lower prices to consumers.  Plaintiff Rossi Fine Jewelers, Inc., operated a retail jewelry store in Dubois, Pennsylvania.  Rossi negotiated with Nature's 10, signed a franchise agreement on April 10, 1997, and paid a franchise fee of $27,000.  After signing the franchise agreements, Rossi made additional, substantial investments, with a view to establishing a Nature's 10 franchise store.

[¶ 4.]  In a companion case, which we also decide today, *Nature's 10 Jeweler's v. Nature's 10, Inc.*, 2002 SD 80, 648 N.W.2d 804, plaintiff there, Sam Savage, also entered into a franchise agreement with the same company.  That franchise agreement contains the following arbitration clause:

Any monetary claim arising out of or relating to this Agreement, or any breach thereof ... shall be submitted to arbitration in [Union] County, South Dakota, in accordance with the rules of the American Arbitration Association and judgment upon the award may be entered in any court having jurisdiction thereof shall be final, binding ... and unappealable.... [1]

A corresponding franchise agreement between Nature's 10 and Rossi was never entered into the record, but since Nature's 10 made use of a standardized franchise agreement, the trial court found that the same arbitration clause would have been in the Rossi agreement, the existence of which is not in dispute.

[¶ 5.] Rossi continues to operate his store, though it may now be a franchise without a franchisor, for in May 1998 Nature's 10, Inc., was formally dissolved as a corporation by the South Dakota Secretary of State. Earlier, on August 27, 1997, the South Dakota Division of Securities had notified defendants that the Nature's 10 franchise registration had expired. Then, on October 1, 1997, the Division formally withdrew the company's registration number, effective July 29, 1997. Defendants were warned that the company "will no longer be engaged in the offer or sale of franchises in the State of South Dakota." Thus, Rossi paid his franchise fee four months before Nature's 10 was no longer allowed to sell franchises.

[¶ 6.] In his complaint, Rossi alleged the following: (1) breach of contract, (2) failure of consideration, (3) breach of implied duty of good faith and fair dealing, (4) actual fraud, (5) constructive fraud, (6) deceit, (7) misrepresentation in the sale of a franchise, and (8) personal liability of directors and officers. Defendants moved for compulsory arbitration in accordance with the clause in the franchise agreement. The circuit court granted the motion. Rossi appeals on the following questions: (1) Did defendants waive arbitration rights? (2) Are all defendants covered under the arbitration clause? (3) Are all of Rossi's claims to be resolved under arbitration?

## Analysis and Decision

[¶ 7.] We have consistently favored the resolution of disputes by arbitration. *Thunderstik Lodge, Inc. v. Reuer,* 1998 SD 110, ¶ 14, 585 N.W.2d 819, 822. The purpose for arbitrating disputes is to provide a relatively quick and inexpensive resolution without the cost and delay that may come with legal proceedings. *Id.* There is an overriding policy favoring arbitration when a contract provides for it. *Id.*

[¶ 8.] Moreover, South Dakota has adopted the Uniform Arbitration Act. *See* SDCL § 21-25A-1, which provides:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

If there is doubt whether a case should be resolved by traditional judicial means or by arbitration, arbitration will prevail. *Thunderstik Lodge, Inc.,* 1998 SD 110 at ¶ 15, 585 N.W.2d at 822 (citing *City of Hot Springs v. Gunderson's, Inc.,* 322 N.W.2d 8, 10 (S.D.1982)).

### 1. Waiver of Arbitration

[¶ 9.] An arbitration agreement may be waived. *Tjeerdsma v. Global Steel Buildings, Inc.,* 466 N.W.2d 643, 645 (S.D.

---

1. The document actually mentions "Woodbury County, South Dakota," but the trial court found that "Union County, South Dakota," was intended.

1991). Since there is a dominant policy favoring arbitration, however, waiver cannot be lightly inferred. *Id.* The question whether one has waived one's right to arbitrate turns on the significance of the action taken in a judicial forum; this question is one for a court to decide. *Id.* Courts apply a two-part test for deciding whether arbitration has been waived. There must be (1) conduct or activity inconsistent with the right to arbitration and (2) prejudice to the party claiming waiver. *Id.* Mere delay in seeking a stay of litigation without some resultant prejudice to a party cannot be deemed a waiver. *Id.* However, delay and the extent of the moving party's trial-oriented activity are material factors in assessing a claim of prejudice. *Id.* Prejudice may also result from lost evidence, duplication of efforts, or the use of discovery methods unavailable in arbitration. *Id.*

██ [¶ 10.] In our case, Rossi has not shown that evidence was lost, efforts were duplicated, or discovery methods unavailable in arbitration were used. We therefore consider delay and the extent of the moving party's trial-oriented activity. Rossi brought his suit on July 2000. Gunderson moved to compel arbitration with Rossi in November 2000, and other defendants joined the motion that same month. This delay of three to four months would be significant only if accompanied by extensive trial-oriented activity by defendants. The trial court found that defendants' pretrial activity had not been extensive. Our review of the record convinces us that the trial court's determination was correct, and we therefore hold that defendants did not waive their right to arbitrate.

## 2. Defendants Covered under Arbitration Clause

██ [¶ 11.] Rossi argues that some defendants are not covered under the arbi-

tration clause. Those defendants are Mylan, the purchaser of Nature's 10, and various officers of the two companies. As the successor to Nature's 10, Mylan is bound by the obligations incurred by that company; the individual defendants are properly included only in their capacities as officers or directors. In accordance with the Federal Arbitration Act,

> [t]he Federal courts have consistently afforded agents the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation. The rule is necessary not only to prevent circumvention of arbitration agreements, but also to effectuate the intent of the signatory parties to protect individuals acting on behalf of the principal in furtherance of the agreement.

*Hirschfeld Productions v. Mirvish,* 88 N.Y.2d 1054, 1056, 673 N.E.2d 1232, 1233, 651 N.Y.S.2d 5, 6 (N.Y.1996). Furthermore, "[i]t would be manifestly unfair to allow [plaintiffs] to assert claims arising out of agreements against nonsignatories to those agreements without allowing those [defendants] [also to] invoke the arbitration clause contained in the agreements." *A.L. Williams & Assoc., Inc. v. McMahon,* 697 F.Supp. 488, 494 (N.D.Ga. 1988). Nor should plaintiffs be able to "avoid the arbitration for which [they] had contracted simply by adding a nonsignatory defendant, lest the efficacy of contracts and the federal policy favoring arbitration be defeated." *Cosmotek Mumessillik Ve Ticaret Ltd. Sirkketi v. Cosmotek USA, Inc.,* 942 F.Supp. 757, 759 (D.Conn.1996). This rule applies especially when all the claims against the nonsignatory defendants are based on alleged substantially interdependent and concerted misconduct by both the nonsignatories and one or more of the signatories to the contract.

*MS Dealer Service v. Franklin,* 177 F.3d 942, 947 (11thCir.1999). We hold, therefore, that insofar as there is a valid franchise agreement containing an arbitration clause, all named defendants are covered under that clause.

### 3. Claims to be Resolved by Arbitration

■ [¶ 12.] Rossi asserts that at least some of his claims do not fall within the arbitration provision of his franchise contract. It is uncontested that the Federal Arbitration Act (FAA) is the controlling law on this issue.[2] In *Prima Paint Corporation v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and *Southland Corporation v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the United States Supreme Court handed down definitive interpretations of the FAA. In *Prima Paint,* the Court held that a claim of fraud in the inducement of a contract "is for the arbitrators and not for the courts." 388 U.S. at 400, 87 S.Ct. at 1804, 18 L.Ed.2d at 1275. In *Southland,* it declared that any state law that undercuts the enforceability of arbitration agreements violates the Supremacy Clause of the United States Constitution.[3] 465 U.S. at 16, 104 S.Ct. at 861, 79 L.Ed.2d at 15–16.

[¶ 13.] With *Prima Paint* and *Southland* in tow, we now consider relevant state laws. SDCL 53–9–1 provides:

A contract provision contrary to an express provision of law or to the policy of express law, though not expressly pro-

hibited or otherwise contrary to good morals, is unlawful.

Furthermore, SDCL 37–5A–6 provides:

No person may offer or sell any franchise in this state unless there is an effective registration statement on file in accordance with the provisions of this chapter or unless the franchise or transaction is exempted under §§ 37–5A–11 to 37–5A–14, inclusive.

It is uncontested that the franchise agreement between Nature's 10 and Rossi was completed while Nature's 10 was registered as a legal franchisor under South Dakota law. And although no written document memorializing this agreement has been entered into the record, the trial court found, as a matter of fact, that such a document, including an arbitration clause, had been signed by both parties. Since no evidence appears that arbitration is incapable of resolving these disputes, and since the Federal Arbitration Act favors arbitration and any doubts on whether a claim falls within the scope of an arbitration agreement are to be resolved in favor of arbitration, "a court should not deny a motion to compel arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Pennzoil Company v. Arnold Oil Company, Inc.,* 30 S.W.3d 494, 498 (Tex.App.2000) (internal citations omitted). Because we have no such assurance and because the legality of the agreement between Nature's 10 and Rossi is undisputed, its terms are to be enforced as written. Accordingly, we affirm the trial court's judgment that the parties must

---

**2.** Because the franchise agreements were between South Dakota parties and out-of-state parties, they affect interstate commerce and the FAA governs. 9 USC §§ 1–14.

**3.** The latter holding was helpfully rephrased by Justice Stevens in his concurrence: "[t]he

Court holds that an arbitration clause that is enforceable in an action in federal court is equally enforceable if the action is brought in state court." *Southland,* 465 U.S. at 17, 104 S.Ct. at 861, 79 L.Ed.2d at 16 (Stevens, J., concurring).

proceed to compulsory arbitration on all claims.

[¶ 14.] GILBERTSON, Chief Justice, and SABERS and AMUNDSON, Justices, and GORS, Acting Justice, concur.

[¶ 15.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.