2003 SD 136

PESKA CONSTRUCTION COMPANY, INC., a South Dakota Corporation, Plaintiff and Appellee,

v.

PORTZ INVESTMENT, Limited Liability Partnership, Defendant,

and

Area Steel, and Ryan Shawd, Individual, Defendants and Appellants.

Peska Construction Company, Inc., a South Dakota Corporation, Plaintiff and Appellee,

v.

Portz Investment, Limited Liability Partnership, Defendant and Appellant,

and

Area Steel, and Ryan Shawd, Individual, Defendants.

Nos. 22549, 22575.

Supreme Court of South Dakota.

Considered on Briefs Oct. 6, 2003.

Decided Nov. 25, 2003.

Rehearing Denied Dec. 11, 2003.

Melissa Nicholson of Johnson, Eklund, Nicholson & Peterson, Sioux Falls, Attorneys for plaintiff and appellee.

Ronald G. Schmidt of Schmidt, Schroyer & Moreno, Rapid City, Attorneys for de-

fendants and appellants, Area Steel and Ryan Shawd.

Brian K. Kirby of Bangs, McCullen, Butler, Foye & Simmons LLP, Sioux Falls, Attorneys for defendant and appellant, Portz Investment, LLP.

ZINTER, Justice.

[¶ 1.] Peska Construction Company (Peska) sued Portz Investment (Portz) and Area Steel to foreclose on a mechanic's lien and recover money due for work performed on Portz's property. Portz and Area Steel counterclaimed alleging defects in the four concrete slabs constructed by Peska on the property. The parties subsequently entered into an agreement to arbitrate all issues relating to all four slabs. The day before the arbitration hearing, latent defects were discovered, and Portz and Area Steel moved to amend their counterclaims to include those defects in the arbitration. The arbitrator denied the motion to amend, but severed the amended counterclaims for later arbitration. Arbitration then proceeded as scheduled, but only on the first two slabs, and an award was entered against Peska on those two slabs. The award also provided that all severed claims on the two remaining slabs should be arbitrated or litigated later. However, the trial court denied Portz's and Area Steel's motion to arbitrate or litigate any claims on the remaining two slabs. The trial court ruled that the parties only agreed to a two-day arbitration, the parties utilized both days arbitrating the first two slabs, and therefore, Peska had fully exhausted its duty to arbitrate or litigate the remaining issues. Portz and Area Steel appeal. We reverse and remand for arbitration on the remaining two slabs.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] Area Steel was the general contractor on a steel storage building project, and Peska was the concrete subcontractor. Peska poured four concrete slabs that were to be the buildings' foundations. The contract required the concrete slabs to be four inches thick. The contract also required Peska to use eighteen-inch by twelve-inch footings under each slab.

[¶ 3.] Peska completed the slabs, but was not paid for its work. Therefore, Peska filed a mechanic's lien on the property. Peska also filed a complaint against Portz and Area Steel seeking to foreclose the mechanic's lien. Portz and Area Steel each filed answers and counterclaims alleging that Peska's work was defective.

[¶ 4.] The alleged defects primarily involved two slabs, but there were problems with all four slabs. One of the slabs was constructed "out of square." This required Peska to saw off some of the concrete in order to make it square. Also, when Area Steel drilled holes in two slabs to anchor the steel storage buildings, it discovered that the concrete was as little as two inches thick. This lack of thickness adversely affected Area Steel's ability to anchor the buildings to the concrete. Finally, there were problems with "saw-cuts" and potential water penetration around the sills and doorways of all four slabs.

[¶ 5.] After the foreclosure action was commenced in circuit court, the parties engaged in discovery. The circuit court also held a pretrial conference and filed a scheduling order. However, in April 2001, the parties entered into an Agreement For Voluntary Binding Arbitration and Order. This agreement was approved by the circuit court, and the matter was ordered to binding arbitration under SDCL Ch. 21–25A, South Dakota's version of the Uniform Arbitration Act.

[¶ 6.] Under the arbitration agreement, the parties expressly agreed to arbitrate

"all issues" regarding *all four slabs*. The parties agreed that those issues would be determined by the pleadings, exhibits, depositions, and other written submissions, as well as live testimony of witnesses and arguments of counsel; however, the agreement further provided that motions to amend the pleadings could be submitted. The agreement also provided that the arbitration was to last two days.

[¶ 7.] The day before arbitration, Ryan Shawd (d/b/a Area Steel), Mr. Portz, attorney Ronald G. Schmidt, and an engineering expert met at the project site. They planned to walk through the site to prepare for the arbitration. While they were inspecting the slabs and buildings, they examined the slab that had been poured out of square. In order to determine if Peska's repair of that slab resulted in the exposure of any iron reinforcing rods, they began to dig around the foundation. Although they only intended to check on the repair, they inadvertently discovered that the required footing had not been poured under the slab. Those present at the walkthrough then dug around the remaining concrete slabs in fifteen to twenty places. They discovered that the required footings were missing on all four slabs.

[¶ 8.] Portz and Area Steel immediately faxed a proposed amendment to the counterclaims to Peska adding the missing footings claim. As with the prior counterclaims, the proposed amendments related to all four slabs. The proposed amendments significantly increased the damages claimed.

[¶ 9.] Peska immediately opposed the proposed amendment. Peska also objected at the commencement of the arbitration hearing. Peska argued that it did not have an opportunity to investigate the footings claim. Consequently, the arbitrator denied the motion to amend, but he severed the amended counterclaim to allow Peska to investigate the missing footings issue. However, for some reason not disclosed by the parties, the arbitrator then somewhat inconsistently severed all claims on two of the slabs/buildings. He ruled that the parties should later "arbitrate the[se] additional two buildings or present th[e] amended counterclaim to Circuit Court." Consequently, the missing footings and all previously disclosed claims on those two slabs were severed and deferred for later arbitration. The parties then proceeded to arbitrate all claims, *including the missing footings*, on the first two slabs.

[¶ 10.] On June 12, 2001, after the arbitration hearing, Peska offered to buy the entire storage property from Portz, "without any discounting for faulty cement work." This settlement offer included all four slabs. Portz declined the offer.

[¶ 11.] The arbitrator issued his final decision on July 5, 2001. The arbitrator ruled that Peska's mechanic's lien could not be enforced on the first two slabs because Peska breached the contract with respect to slab thickness, the lack of footings, and other defects. Portz was awarded $115,200.00 in damages for the removal and replacement of the first two buildings and slabs. Consistent with his prior severance ruling, the arbitrator also "express[ed] no decision on the other two slabs and foundations."

[¶ 12.] Peska satisfied the $115,200.00 award on August 29, 2001. In a letter to Portz accompanying the payment, Peska stated that Peska and Portz "are still negotiating at this time, but [Peska] and [Portz] have agreed upon the payment of this amount at this time, and will continue to attempt negotiations as to settlement of the entire matter." The parties were, however, unable to reach a settlement on the final two slabs. Therefore, in accordance with the decision of the arbitrator, Portz and Area Steel demanded that the

claims on the remaining two slabs either be submitted to arbitration or returned to circuit court. Peska refused either alternative.

[¶ 13.] Portz and Area Steel then moved the circuit court to compel arbitration, or alternatively, to schedule a trial date. The court denied the motion. The court concluded that the arbitrator lacked authority to sever the claims. The trial court ruled that "[t]o the extent that the arbitrator's decision expressly or impliedly authorized or required a second arbitration proceeding, this too clearly would have been in contravention of the plain and unambiguous language of the [two-day limitation in the] arbitration agreement." The court ultimately concluded that "there is no such further right to litigate and that all issues should have been, could have been, and were concluded by the arbitration proceeding and the arbitration award...."[1] This left Portz and Area Steel with no remedy for all defects in the remaining two slabs.

[¶ 14.] Portz and Area Steel appeal the circuit court's decision, raising the following issues:

1. **Whether there was an agreement to extend arbitration.**

2. **Whether the arbitrator had authority to sever the claims, and whether that authority was reviewable by the court.**

3. **Whether Peska waived or was estopped from asserting a lack of an arbitration agreement or exhaustion of the arbitration requirement.**

## STANDARD OF REVIEW

 [¶ 15.] This Court has consistently expressed its preference for the use of arbitration to resolve disputes. *Thunderstik Lodge, Inc. v. Reuer*, 1998 SD 110, ¶ 14, 585 N.W.2d 819, 822 (citing *Tjeerdsma v. Global Steel Bldgs., Inc.*, 466 N.W.2d 643, 645 (S.D.1991); *City of Hot Springs v. Gunderson's, Inc.*, 322 N.W.2d 8, 10 (S.D. 1982)). "The purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes by avoiding the expense and delay of extended court proceedings." *Azcon Constr. Co., Inc. v. Golden Hills Resort, Inc.*, 498 N.W.2d 630, 633 (S.D.1993) (quoting *L.R. Foy Constr. Co. v. Spearfish Sch. Dist.*, 341 N.W.2d 383, 388 (S.D.1983) (Henderson, J., specially concurring)). Therefore, "[a]rbitration awards are presumptively correct." *Thunderstik*, 1998 SD 110, ¶ 12, 585 N.W.2d at 822 (citing *Azcon*, 498 N.W.2d at 635). Furthermore, "[j]udicial review of an arbitration award is very narrow." *Id.*

 [¶ 16.] However, "[a]rbitrators derive their authority from, and must comply with, the arbitration agreement." *Azcon*, 498 N.W.2d at 633 (citing *Aamot v. Eneboe*, 352 N.W.2d 647, 649 (S.D.1984)). The arbitration agreement circumscribes the authority of the arbitrator, who "can bind the parties only on issues that they have agreed to submit.... Whether an arbitrator has exceeded th[ose] bounds is an issue for judicial resolution." *Id.* (quoting *New Orleans S.S. Ass'n v. Gen. Longshore Workers*, 626 F.2d 455, 467 (5th Cir. 1980) *aff'd sub nom., Jacksonville Bulk Terminals v. Longshoremen's*, 457 U.S. 702, 102 S.Ct. 2672, 73 L.Ed.2d 327 (1982)). Furthermore, "the power to construe the

---

1. In its Findings of Fact, the trial court found that "all issues were concluded by the arbitration proceeding held on May 31 and June 1, 2001, and the subsequent arbitration awards rendered by the arbitrator." The trial court concluded "that there is no further right to litigation of any issue in regard to this matter."

contract itself and to determine what is within and what without such contract ... belongs primarily to the courts." *Id.* (further citations omitted).

## ANALYSIS AND DECISION

[¶ 17.] **1. Whether there was an agreement to extend arbitration.**

[¶ 18.] In this issue, Portz and Area Steel argue that after the arbitrator's amendment/severance ruling, all parties knew that all issues involving the slabs would not be resolved, and that the parties agreed to extend the arbitration in order to later address the remaining two slabs. Peska vehemently denies agreeing to sever, postpone, or further arbitrate the remaining two slabs.

[¶ 19.] We agree that, after arbitration, Peska did not expressly agree to further arbitrate the remaining two slabs. However, Peska's conduct reveals its understanding that it was obligated by the original agreement to arbitrate the claims arising from those remaining two slabs. That conduct first appeared in the arbitration hearing itself. In that hearing, the parties heard the arbitrator's severance ruling and then proceeded to arbitrate all claims (including the objectionable missing footings) on the first two slabs, while not arbitrating any claims (including the expressly agreed to "saw-cut" and "sill/doorway" claims) involving the remaining two slabs. This conduct is totally inconsistent with Peska's current position that there was no agreement obligating it to arbitrate any claims on the remaining two slabs.

[¶ 20.] Peska's conduct after the initial arbitration hearing also acknowledged its obligation to arbitrate the remaining two slabs under the original agreement. On August 29, 2001, Peska sent a letter to Portz and Area Steel. This letter was accompanied by Peska's payment of $115,200.00, "as full and final payment of the [July] arbitration decision." However, the letter also stated: "[m]y understanding is that the Plaintiff [Peska] and Defendant [Portz and Area Steel] *are still negotiating at this time,* but Plaintiff and Defendant have agreed upon the payment of this amount at this time, and *will continue to attempt negotiations as to settlement of the entire matter.*" (Emphasis added.) Although Peska contends that this language was merely intended "as an attempt to put [Portz and Area Steel] off," this letter clearly indicated that, at that time, Peska believed it had an obligation to resolve the claims on the remaining two slabs.

[¶ 21.] A September or October 2001 visit from representatives of Peska's insurance company further confirms that understanding. At that time, Peska's insurance representatives examined each of the four slabs, despite Peska's current contention that all issues had been completely resolved by the July arbitration award. Considering all of the forgoing circumstances, we believe that even though there was no express agreement to further arbitrate after the hearing, the parties' conduct acknowledged their duty under the original agreement to arbitrate the claims on the remaining two slabs.

[¶ 22.] We also believe that even if Peska had not contemporaneously acknowledged this obligation to arbitrate the two remaining slabs, that obligation existed under the original arbitration agreement. That agreement specifically contemplated the arbitration of new issues through amendments to the counterclaims.[2] The agreement also gave the ar-

---

2. Although the trial court found the arbitrator had no authority to permit an *untimely*

bitrator authority to decide whether the new issues could be included. The agreement broadly stated: "[t]he arbitrator shall be the sole judge of all issues of law and fact. There can be no appeal from any decision made by the arbitrator, except regarding a claim of fraud or that the arbitrator violated one of the provisions of th[e] Agreement." Thus, we believe that even if Peska did not expressly agree to further arbitrate the remaining two slabs, it expressly agreed to let the arbitrator decide that issue by giving the arbitrator the authority to make amendment/severance decisions.

[¶ 23.] **2. Whether the arbitrator had authority to sever the claims, and whether that authority was reviewable by the court.**

■■■ [¶ 24.] Notwithstanding language of the agreement giving the arbitrator authority to decide all issues of law and fact such as amendment/severance issues, Peska claims the arbitrator had no authority to make such a decision because it required *further* arbitration. Both Peska and the circuit court believed that the underlying arbitration agreement did not authorize such a decision because, in effect, it would extend the arbitration beyond the scheduled two days. We begin our analysis of this issue by reviewing the terms of the arbitration agreement.

[¶ 25.] Under the parties' written arbitration agreement, the issue to arbitrate was: "Whether Peska breached its Contract as specified for the construction of *the four concrete slabs.*" (Emphasis added.) The parties also agreed to arbitrate *"all issues "* arising from each of the four slabs. This included new issues arising

from the four slabs. The circuit court specifically found that "[t]he arbitration was intended to address all issues including all liability and damage issues framed by the pleadings[, including] *as may be modified by motion* but subject to the terms and conditions of the arbitration agreement." (Emphasis added.)

[¶ 26.] Just prior to the arbitration, Portz and Area Steel inadvertently discovered the latent defects involving the missing footings. Portz believed that the footings defect would require all four slabs and buildings to be removed, rather than just the two that had thin concrete. This significantly increased Portz and Area Steel's claims for damages.

[¶ 27.] Therefore, in accordance with the arbitration agreement, Portz and Area Steel moved the arbitrator to amend their counterclaims to add the footings defect involved in all four slabs. Peska objected, contending that this new claim required further investigation. Consequently, the arbitrator: (1) denied Portz and Area Steel's motion to amend; (2) determined that the arbitration would continue "under the original claims,"; but, (3) "would allow [Portz and Area Steel] to *sever* their amended counterclaim to give both sides an opportunity to investigate the [footings] claim and either arbitrate the additional 2 buildings or present th[e] Amended Counterclaim to circuit court."

[¶ 28.] This decision on amendment and severance was within the arbitrator's authority. First, the decision was within the contemplation of the agreement's authorization to decide such issues of law. Second, the arbitrator's decision, which did contemplate further proceedings, did not

---

amendment, the amendment provision of the agreement is not so limited. Concededly, another provision of the agreement contained submittal deadlines. However, an arbitrator, just as a court, having been given jurisdiction

to decide all questions of law and fact such as amendments to pleadings, had the implied authority to determine whether an untimely amendment could nevertheless be allowed.

destroy the final, binding nature of the arbitration agreement. It did not because the only claims involved in the remaining arbitration were the original claims that were expressly agreed to be arbitrated, and the latent defects were includable because the agreement expressly allowed the arbitrator to expand arbitrable claims by granting motions to amend. Given the arbitrator's express authority to decide such questions of amendment/severance, this arbitrator had authority to deny the motion to amend, but grant a severance to honor Peska's request to investigate the claim.

[¶ 29.] This power to sever and postpone arbitration on the two slabs is also consistent with the arbitrator's statutory authority. The parties' agreement incorporated the provisions of SDCL Ch. 21–25A. SDCL 21–25A–17 provides for a postponement beyond the parties' deadline if they consent.

> Unless otherwise provided by the agreement, the arbitrators may adjourn the hearing from time to time as necessary and, on request of a party and *for good cause,* or upon their own motion *may postpone* the hearing to a time not later than the date fixed by the agreement for making the award *unless the parties consent to a later date.* . . .

(Emphasis added.)

[¶ 30.] Here, the arbitrator denied the motion to amend, but severed the newly-discovered claims because Peska requested an opportunity to investigate the missing footings. Peska then proceeded to arbitrate on only two of the four slabs knowing that the arbitrator had severed the two remaining slabs. Thus, Peska proceeded in this manner knowing that the arbitration did not encompass all of the claims it had explicitly agreed to arbitrate. We believe, that absent a record preserving an objection to proceed in this manner, Peska

impliedly consented to the statutory postponement.

[¶ 31.] We finally note that the trial court's authority to review the arbitrator's amendment/severance decision was limited. "In a radical departure from the common law, the Uniform Arbitration Act constrains the court's authority to the consideration of (1) whether an agreement to arbitrate exists, (2) whether defendant has a duty to arbitrate under the agreement, and (3) whether defendant has breached this duty." *City of Hot Springs,* 322 N.W.2d at 11 (further citations omitted).

[¶ 32.] In this case, the parties explicitly agreed to arbitrate *all issues* on *all four slabs.* They also agreed that the issues to arbitrate could be changed by motions to amend the pleadings. As soon as Portz and Area Steel discovered the latent defects involving the missing footings, they moved to amend in accordance with the agreement. However, because Peska objected to the amendment on the ground that it denied it an opportunity to investigate, the arbitrator exercised his delegated authority to deny the amendment, but sever the claims to permit that investigation.

[¶ 33.] Because this amendment/severance decision was within the scope of the agreement, the arbitrator's decision was subject to a very limited review by the circuit court. "[T]he decision of an arbitrator who has not exceeded his contractual authority is almost always upheld." *Iowa Elec. Light and Power Co. v. Local Union 204 of the Internat'l Bhd. of Elec. Workers,* 834 F.2d 1424, 1427 (8th Cir. 1987). Here, the amendment/severance decision was within the arbitrator's contractual authority because: (1) there was an agreement to arbitrate all issues on all four slabs; (2) there was an agreement to give the arbitrator authority to decide amendment/severance issues and that au-

thority created a duty to arbitrate the severed claims; and, (3) Peska breached its duty to arbitrate the severed claims. Therefore, the circuit court's scope of review was constrained, and we conclude that it erred in concluding that the arbitrator exceeded his authority.

[¶ 34.] In light of our holding on issues 1 and 2, we need not reach issue 3.

[¶ 35.] Reversed and remanded with directions to order arbitration of the severed claims.

[¶ 36.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.