Oscar Murov, J.
This is a summary proceeding under article 7 of the Real Property Actions and Proceedings Law to recover possession of a gasoline station based upon an alleged breach of the respondent’s lease and supply contract with the petitioner landlord.
The respondent operated a gasoline station in the Town of Huntington, State of New York, pursuant to an annual lease with the petitioner. The respondent also entered into a retail dealer’s contract with the petitioner to sell its products.
The petitioner alleges that, in violation of its supply contract with the respondent, the respondent’s employee adulterated its products by adding regular gas to its premium tanks and selling this combination of fuels to motorists as premium gasoline. Accordingly, the petitioner asks this court to grant an order evicting the respondent and allowing petitioner to recover possession.
The respondent denies the allegations but contends, that in any event, the word “ adulterate ” as used in the supply contract,- does not include the mixing of two gasolines produced by the same supplier. Respondent also claims that the landlord xvaived the breach of the supply contract by not acting promptly when informed of it. The respondent stated that the petitioner, although notified of this incident on November 29, 1971, did not act upon it until January 3, 1972. During this interval the petitioner collected rent and supplied the respondent with numerous deliveries of gasoline. Based upon these actions the respondent contends that this court may properly find a waiver of the alleged breach by the petitioner. The respondent further contends that he was not present during the alleged incident and neither authorized nor condoned such a practice. Accordingly, the respondent contends that even if the incident occurred, he did not breach his contract with the petitioner since he should not be held accountable, in this instance, for the unauthorized acts of his employee. The respondent also requests this court to invoke its equity powers to prevent eviction on the grounds that it is too drastic a remedy which would terminate the respondent’s livelihood, investment and good will of his customers.
The court finds, after trial, as a matter of fact and law, the following:
*155 On November 28, 1971 and again on November 29, 1971, respondent’s employee did in fact siphon gasoline from the regular tank and deposit it in the premium tank. This fact has been established by a fair preponderance of the credible evidence. By the terms of the lease, a breach of the supply contract is a breach of the lease. Having proven this fact, it still remains to decide whether such mixing of fuels is an “ adulteration” under the terms of the supply contract. Paragraph Six of the reail dealer’s contract provides that the “ Buyer shall not mix any other products with the Seller’s products or adulterate them in any way.” The petitioner claims that such mixing violates the language and intent of the above-noted clause. The respondent denies this.
The respondent states in his brief that the landlord failed to establish that the tenant mixed any other products with Mobil’s or that he adulterated them in any way. The tenant alleges that the landlord is seeking to expand the meaning of the word “ adulterate ” by using it to categorize the acts of the tenant’s employee. The tenant states that the word as defined 11 by the law dictionaries and the general dictionaries, means to mingle or deteriorate by introduction of a foreign substance with the genuine article.” This being the case, respondent alleges that the mixing of fuels was not a breach of the supply contract. We do not agree.
The Random House Dictionary of the English Language defines “ adulterate ” as the following: “ To debase by adding inferior materials or elements; make impure by admixture; use cheaper, inferior, or less desirable goods in the production or marketing of (any professedly genuine article) ” (italics added).
The unabridged edition of Webster’s Third New International Dictionary defines ‘ ‘ adulterate ’ ’ as the following: “ 1 a: to corrupt, debase, or make impure by the addition of a foreign or a baser substance; prepare (as for sale) with one or more ingredients included that are not part of the alleged substance * * * (2): to sell (a commodity) under the name of another commodity * * * lessen the purity of ’ ’ (italics added). It seems abundantly clear that the word “ adulterate ”, as used in society and within the context and intent of the parties to the supply contract, was intended to prevent exactly what has taken place in this instance. We agree with the petitioner that, by adding regular gasoline of a lower octane rating to his supply of premium gasoline, the tenant was making his premium gasoline inferior.
*156 The court finds respondent’s definition of “ adulteration ” as untenable. While this is a civil matter now before this court, the acts by the employee may be a basis for further criminal action (General Business Law, § 391-a, subd. 4). The Legislature of this State has specifically stated that such mixing of fuels constitutes a fraud upon the consuming public and is punishable as a misdemeanor.
In his lease with the petitioner, the respondent agreed, in paragraph Four, that “ the premises shall not be used in connection with the sale of alcoholic beverages or any purpose prohibited by law, ordinance, covenant, condition or restriction ”. This court finds that even if the tenant could have supplied this court with some technical definitions of “ adulteration ” which would have supported his claim, the lease itself would be sufficient to define adulteration with sufficient clarity so as to include within its meaning the mixing of regular and premium gasolines. The tenant, by the terms of the lease, was put on notice that the mixing of fuels, an act prohibited by law, was not to be tolerated by the landlord. It is certainly clear to this court that the intention of the parties to the lease was violated by the employee’s acts.
The respondent argues that since the lease and supply contract were both drawn by the landlord ‘1 any ambiguity must be resolved in favor of the lessee ”. In support of this basic principle of contract law, the respondent cites several cases. This court does not differ with this principle of law, but rather, finds such ambiguity lacking in this case. We are mindful of the fact that where a landlord asks for termination of a lease based upon its breach, the court should proceed with caution since the continuation rather than the extinction of grants is favored. (Trent v. Corwin, 76 N. Y. S. 2d 198; Brause v. 2968 Third Ave. Leasing Co., 41 Misc 2d 348.) However, even though this court has strictly construed the lease and supply contract against their author, it is compelled to agree with the landlord that an “ adulteration ” has in fact occurred.
The tenant claims that, even if a breach of the contract can be found, the landlord waived such breach by waiting more than a month before notifying the tenant that it would act upon such breach and seek his eviction. The tenant alleges that during this period numerous gasoline deliveries were made to his station and that two months’ rent was paid. The trial established these allegations to be true. The tenant contends that such acts on the part of the landlord, in effect, waived the breach. The landlord contends that the delay was occasioned, *157 not by laxity on its part, but through its efforts to have a sample of the tenant’s premium gasoline analyzed by its chemists in Princeton, New Jersey. After the chemists confirmed that the “ samples did not meet the Mobil manufacturing specification requirement for premium anti-knock quality for this area,” the landlord checked into the number of gallons of gasoline delivered to the tenant’s station and the number of gallons pumped through the tenant’s pumps between July 18, 1971 and December 16, 1971. This check revealed that 10,000 more gallons of premium gasoline were pumped than were delivered. The landlord attempted to elicit a satisfactory explanation for such a discrepancy from the tenant, but his “ explanation was found wanting ’ ’. We also find this to be true from the evidence presented. Due to the fact that the landlord is a large corporate entity, the rent from the tenant for January, 1972, was inadvertently cashed by its financial department. As soon as this fact was brought to the attention of the landlord’s agents familiar with the situation, Mobil sent a refund check to the tenant for January’s rent. Although the tenant denies receiving such a check, the court is satisfied that it was sent.
The court agrees with the landlord that Mobil acted carefully and properly. It conducted a full investigation into this matter before requesting the tenant to remove himself from the premises. Where a forfeiture is involved, a landlord’s right to re-entry for breach of some condition in the lease is voidable only and may be affirmed by the landlord notwithstanding the breach (Wise v. Vaughner, 105 N. Y. S. 2d 338). But as Westdale Realty Corp. v. Labella (188 Misc. 738) pointed out, the question of waiver is primarily one of fact where there is a dispute in connection with the facts. The facts in this case do not indicate to this court that the landlord in any manner waived the breach.
It is clearly established that a landlord’s acceptance of rent while he negotiates with the tenant with respect to a violation of their lease does not, barring a proviso in the lease to the contrary, constitute a waiver of such breach (Lewis v. Clothes Shack, 62 Misc 2d 767). In Boynton v. Bassford (188 Misc. 188) a landlord was held not to waive the breach where a rent regulation prevented him from commencing his cause of action for several months. Due to this prohibition, no conclusion as to the landlord’s intent to waive notice or renew the tenancy could be drawn from his acceptance of rent during such months. While no statute of that kind exists in the case before us now, the same principle is applicable. Whether it is mandated by *158 statute or reasonableness, no one should act to impair an individual’s livelihood without first being satisfied that his facts are not mere suspicions or conjecture. By its investigation, Mobil evidenced a desire to afford the tenant the benefit of the doubt. Only after it was convinced that the breach occurred, did it act. Such diligence should be commended, not criticized. Therefore, this court finds that no waiver of the breach was ever intended nor should one be imputed by law.
Assuming, arguendo, that a waiver could have been proven by the tenant, this court is of the opinion that such a waiver could not be recognized. In Janowitz v. Jenkins (8 Misc 2d 1077) the tenant was accused of using the premises as a depository for illegal policy slips. While the court found that possession on one’s person does not constitute “ using ” the premises for illegal gambling, it did state (p. 1078) that, “A landlord may not waive the right of removal of a tenant for an occupancy in violation of statute.” In Matter of Johnson v. New Rochelle Municipal Housing Auth. (44 Misc 2d 138) it was stated (p. 140) that if it was proven that an adulterous situation existed on the premises, the “ landlord’s interests in preventing illicit relations on his premises is such that no formal regulation need be posted [as a condition precedent to evicting the tenant] ”. While a violation of the ‘1 Sunday closing laws ” or “ blue laws ’ ’ has been held insufficient to warrant eviction of the tenant (see Matter of Kearns v. Barney’s Clothes, 38 Misc 2d 787) we feel that the fraud perpetrated on the public is of such a serious nature as to justify eviction. This court has examined all the physical facts and surrounding circumstances in determining whether the violation of the lease is substantial enough to justify eviction of the tenant (See Madison 52nd Corp. v. Ogust, 49 Misc 2d 663, affd. 52 Misc 2d 935) and finds -that they do justify permitting this drastic remedy. There can be no waiver by the landlord of a breach by the tenant which would result in a continuing breach of a statute adopted for the protection of the public (2 West 32nd St. Corp. v. Levine, 199 Misc. 1020). The acts alleged and proven to have transpired here were considered so serious by the Legislature that it made the offense' a ¡misdemeanor. Even if the landlord had wanted to, it could not have waived such breach even by an express waiver (Shapiro v. Collins, 12 Misc 2d 71, revd. on other grounds 6 A D 2d 1038).
We are mindful of the tenant’s contention that he was not even in the State when Mobil’s employees witnessed the fuel transferences. Where it can be shown that the tenant was not *159 involved with the criminal activities nor acquiesced to their continuance, eviction is not justified (Humane Soc. v. Joad Enterprises, 65 Misc 2d 8). To permit eviction it must appear that the unlawful purpose is not just a mere isolated act hut must he of a continuing and permanent nature. (190 Stanton v. Santiago, 60 Misc 2d 224.) The evidence introduced at the trial makes it clear that this practice has been going on for some time. Therefore, the respondent’s contention that he was out of the State on November 29, 1971, has little merit. This was a continuing violation. The respondent states that the acts of his employee were unauthorized. He did not produce the employee because he was no longer in his employ. The respondent offered no evidence of any efforts on his part to locate said employee. Even if the tenant could be excused from the alleged violation because it was done by his employee, he offers this court no evidence of his good faith attempt to prove his non-involvement in this scheme. Therefore, we must accept the petitioner’s contention that an employee would have nothing to gain from such a transfer. The gain was to the tenant, not the employee.
The tenant claims that he should not lose his livelihood because of the acts of his former employee. While this court is aware of the fact that one is not liable for the unlawful acts of his agent or for acts outside his scope of employment (Curran v. Buckpitt, 225 App. Div. 380), a principal may nevertheless affirm the tortious or criminal acts of his agent (Allied Stores v. Funderburke, 52 Misc 2d 872). The case before this court now evidences assent.
This court is reluctant to order a forfeiture where it means depriving a person of his means of making a living. But, this court will not .shirk from its responsibility to protect the public from having a fraud perpetrated on them. None of the respondent’s defenses are supported by the evidence. The court will not invoke its equity powers in this instance since the rights of parties to a lease may not be based on a consideration of the equities if their rights have been fixed by the plain language of the instrument. (Daniel Holding Corp. v. 234 West 42d St. Corp., 255 App. Div. 8.) The present instrument does exactly that. Therefore, this court has no other choice but to grant the petitioner’s request to terminate the lease and recover possession of the premises.