*615 OPINION OF THE COURT
David B. Cohen, J.
This holdover proceeding was commenced by Arthur Kokot (petitioner), to regain possession of the rent-stabilized apartment located at 210 West 82nd Street, Apartment 4W, New York, New York, 10024 (the premises) from Frederick Barton (respondent) for petitioner’s own personal use and occupancy.
I. Factual and Procedural History
Respondent moves to dismiss pursuant to CPLR 3211 (a) (1), (2) and (7) claiming that he was offered a timely lease renewal, had 60 days to accept the offer as provided by the New York City Rent Stabilization Code (RSC) (9 NYCRR) § 2523.5 (a) and that the landlord may not rescind his offer during the 60-day period.
On or about May 17, 2005, the prior owner mailed a copy of the notice of renewal lease, scheduled to commence on September 1, 2005, at that time, the current owner was a principal of the prior owner. On May 26, 2005, petitioner became title owner of the premises and mailed a notice of nonrenewal to respondent that day. On May 27, 2005, petitioner sent respondent an amended notice of nonrenewal containing a provision rescinding the notice of renewal lease. Respondent does not dispute that the notice of nonrenewal and amended notice of nonrenewal were received on May 28, 2005, within the statutory period. On May 28, 2005, respondent signed and sent back the lease renewal.* By attorney correspondence dated June 10, 2005, petitioner advised respondent that he was rejecting and returning the renewal lease.
Petitioner claims that the initial mailing of the lease renewal was made unintentionally. He further argues that the offer was rescinded by the subsequent mailing of the notice of nonrenewal prior to respondent’s acceptance.
II. Questions Presented
Two issues are before the court: (1) whether a rent-stabilized lease renewal offer, made as a result of unintended office error and which petitioner promptly revoked, is binding upon the *616 petitioner, and (2) whether a tenant has 60 days from the date of service of a timely made rent-stabilized lease renewal offer to accept such offer, regardless of the owner’s attempt to revoke the offer.
III. Conclusions of Law
1. Unintentionally Made Lease Renewal Offers
A rent-stabilized lease renewal offer, sent by the owner, is binding upon the owner even where the owner claims that it was sent unintentionally (Steinmetz v Barnett, 155 Misc 2d 98, 101 [Civ Ct, NY County 1992]). “Petitioner is not saved by his assertion that the tender of a lease renewal offer to respondent tenant was a mere clerical error, and thus by the implication that he did not intend to offer respondent tenant a renewal of the lease for the subject premises” (id.). “The fact that the landlord may not have intended the proposed lease ... to constitute a binding offer is immaterial because the statute requires that the offer be binding” (123 W. 15, LLC v Compton, 4 Misc 3d 138[A], 2004 NY Slip Op 50938[U], *1 [App Term, 1st Dept 2004], quoting Matter of East 56th Plaza v New York City Conciliation & Appeals Bd., 56 NY2d 544, 546 [1982]). Accordingly, notwithstanding petitioner’s claim of clerical error, petitioner’s offer of a lease renewal to respondent is binding upon the petitioner.
2. Petitioner’s Attempt To Revoke The Lease Renewal Offer
The remaining issue is whether petitioner can revoke a rent-stabilized lease renewal offer after service but prior to acceptance. Prior to recodification, renewal notices were governed by the Code of the Rent Stabilization Association of New York City (RSA Code) § 60, which read in pertinent part as follows:
“Section 60. Notices for Renewal Leases “Every owner shall notify the tenant in occupancy not more than 150 and not less than 120 days prior to the end of the tenant’s lease term, by mail, of such termination and offer to renew the lease at a rent not in excess of the stabilization rent permitted for each renewal lease and otherwise on the same conditions as the expiring lease, and shall give such tenant a period of 60 days to renew such lease and accept such offer; provided, however, (a) that nothing herein shall shorten the 60-day period a tenant has in which to renew after notification by the owner of his options on renewal . . . .” (RSA Code § 60 *617 [emphasis added].)
The Appellate Term consistently interpreted section 60 to require that once the owner notified the tenant of her option to renew the lease, the 60-day period in which to renew may not be shortened (De Santis v Randolph, 103 Misc 2d 573 [App Term, 1st Dept 1980]; Perlman v Rosenthal, NYLJ, May 20, 1977, at 4, col 1 [App Term, 1st Dept 1977]). In Perlman, just as in the case at bar, the new owner, seeking the apartment for his own use, attempted to withdraw the prior owner’s renewal offer before the tenant had accepted. The Perlman court held that the owner could not withdraw the offer during the 60-day period (see De Santis v Randolph, 103 Misc 2d at 576). In 1987, RSA Code § 60 was recodified into the Rent Stabilization Regulations of the Division of Housing and Community Renewal (DHCR), as RSC § 2523.5 (a). RSC § 2523.5 (a) reads, in pertinent part, as follows:
“On a form prescribed or a facsimile of such form approved by the DHCR, dated by the owner, every owner, other than an owner of hotel accommodations, shall notify the tenant named in the expiring lease not more than 150 days and not less than 90 days prior to the end of the tenant’s lease term, by mail or personal delivery, of the expiration of the lease term, and offer to renew the lease or rental agreement at the legal regulated rent permitted for such renewal lease and otherwise on the same terms and conditions as the expiring lease. The owner shall give such tenant a period of 60 days from the date of service of such notice to accept the offer and renew such lease. The tenant’s acceptance of such offer shall be entered on the designated part of the prescribed form, or facsimile thereof, and returned to the owner by mail or personal delivery. Pursuant to the provisions of section 2522.5 (b) (1) of this Title, the owner shall furnish to such tenant a copy of the fully executed renewal lease form bearing the signatures of the owner and tenant within 30 days of the owner’s receipt of the renewal lease form signed by the tenant. Upon execution by the owner and delivery to the tenant, such form shall constitute a binding renewal lease . ...” (9 NYCRR 2523.5 (a) [emphasis added].)
During the recodification of this section, the drafters dropped the provision in section 60 which stated that “nothing herein shall shorten the 60-day period a tenant has in which to renew *618 after notification by the owner of his options on renewal.” Since the recodification, one court, in a case directly on point, has nevertheless held that under the new code provision, RSC § 2523.5 (a), once a renewal lease is offered, “the landlord must give the tenant 60 days from the date of service of the renewal notice to accept the offer” (Derderian v Lehmann, 2001 NY Slip Op 40433[U], *2 [Civ Ct, NY County 2001, Cavallo, J.], citing RSC § 2523.5 [a]; De Santis v Randolph, 103 Misc 2d at 576, supra).
Petitioner asserts that since the phrase “nothing herein shall shorten the 60-day period a tenant has in which to renew after notification by the owner of his options on renewal” was dropped from the regulation during recodification, that the DHCR drafters intended to change the previously irrevokable 60-day renewal offer into a revokable offer.
In determining questions of statutory and regulatory interpretation, “we turn first to the plain language of the statutes as the best evidence of legislative intent” (Matter of Malta Town Ctr. I, Ltd. v Town of Malta Bd. of Assessment Review, 3 NY3d 563, 568 [2004]). As the language of the statute itself is the clearest indicator of legislative intent, the statutory text must be the starting point in any effort at interpretation and courts must give effect to the plain meaning of the statute (Majewski v Broadalbin-Perth Cent. School List., 91 NY2d 577, 583 [1998]). The current regulation provides that “[t]he owner shall give such tenant a period of 60 days from the date of service of such notice to accept the offer and renew such lease” (RSC § 2523.5 [a]). Use of the word “shall” makes this provision mandatory in nature, and can only be interpreted to mean that the owner must keep the renewal offer open for 60 days — the only reasonable interpretation to be drawn from a reading of the plain language of the regulation. The unequivocal and mandatory nature of this clause likely explains why the drafters simply removed the superfluous language “nothing herein shall shorten the 60 day period ...” from the prior codification at RSA Code §60.
“In matters of statutory and regulatory interpretation, [the Court of Appeals] ha[s] repeatedly recognized that ‘legislative intent is the great and controlling principle, and the proper judicial function is to discern and apply the will of the [enactors]. Generally, inquiry must be made of the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history’ ” (Matter of ATM One v *619 Landaverde, 2 NY3d 472, 476-477 [2004], quoting Mowczan v Bacon, 92 NY2d 281, 285 [1998]).
The regulatory intent of the Rent Stabilization Code is articulated in RSC § 2520.3 which reads as follows:
“§ 2520.3. Construction and implementation.
“This Code shall be construed so as to carry out the intent of the Rent Stabilization Law to ensure that such statute shall not be subverted or rendered ineffective, directly or indirectly, and to prevent the exaction of unjust, unreasonable and oppressive rents and rental agreements, and to forestall profiteering, speculation and other disruptive practices tending to produce threats to the public health, safety and general welfare; and that the policy herein expressed shall be implemented with due regard for the preservation of regulated rental housing.”
The goals of preservation of regulated housing would certainly not be advanced by permitting an owner to rescind the offer of a renewal lease once made.
Furthermore, in a substantial advisory opinion on the subject, DHCR states, inter alia, that “[t]enants have 60 days from the date of service of the Form to accept the owner’s offer to renew the lease ...” yet makes no mention of DHCR’s purported intent to change the regulatory scheme to permit revocation of lease renewal offers during the period (see DHCR Advisory Op 88-1, issued May 1, 1987 and reissued in July 1995, at 1Í 3). If, as petitioner suggests, such a change had been intended by the DHCR drafters, it is likely that such modification would have been discussed, or at least mentioned, in the relevant advisory opinion.
Petitioner relies on the regulatory language that “[u]pon execution by the owner and delivery to the tenant, such form shall constitute a binding renewal lease” (RSC § 2523.5 [a]) to claim that the lease renewal is not binding until it is returned countersigned to the tenant. Although the renewal lease may not be binding until the lease is delivered, this in no way impacts upon the landlord’s obligation to give the tenant 60 days after service of the notice to accept the renewal offer (see Derderian v Lehmann, supra). Also, if a landlord refuses to deliver the fully executed copy of the renewal lease to the tenant “within 30 days from the owner’s receipt of such form signed by the tenant, such tenant shall not be deprived of any of his or her rights *620 under the RSL and this Code and the owner shall be barred from commencing any action or proceeding against the tenant” (RSC § 2523.5 [a]). Thus, this provision serves to ensure that, in spite of the landlord’s failure to deliver the renewal lease, a tenant both maintains the protections of rent regulatory status and is immunized from suit by the landlord. Thus, the regulatory context makes the delivery of the fully executed lease the final formalization of the renewal agreement and not an opportunity for the landlord to change his mind and unravel the renewal lease agreement.
Accordingly, petitioner’s revocation during the 60-day period after service of the renewal notice was impermissible under RSC § 2523.5 (a) and was without effect. Respondent accepted the renewal offer in a timely manner and the owner must furnish to the tenant a copy of the fully executed renewal lease form within 30 days. Respondent’s motion to dismiss is granted and this proceeding is dismissed.

 Although a factual issue does exist as to whether the lease renewal was accepted prior to, or after, the revocation, for purposes of a motion to dismiss the petitioner’s allegation that revocation occurred prior to acceptance must be accepted by this court as true.