OPINION OF THE COURT
Scott Fairgrieve, J.
Respondent Lisa Patterson moves to dismiss the summary proceedings on the grounds “that the Petitioner has waived its right to commence the instant proceeding and cannot meet its burden of proof even if all facts contained in the petition and termination were deemed to be true and accurate.”
Petitioner caused to be served upon respondent a 30-day notice of termination of tenancy concerning apartment 4A located at 4A Martin Luther Kang Drive, Hempstead (hereinafter referred to as the notice). The notice is dated September 21, 2015 and is executed by Peii Wisneski, registered managing agent. The notice terminates the lease as of October 31, 2015. The notice cites paragraph 23 (c) of the lease executed November 14, 2014, the one-strike policy — criminal activity addendum, and crime free lease addendum as grounds for the eviction.
Paragraph 23 (c) of the lease, as set forth in the notice, states:
“The Landlord may terminate this agreement for the following reasons: . . .
“(3) drug related criminal activity engaged in on or near the premises by any tenant, household member, or guest, and any such activity engaged in on the premises by any other person under the tenant’s control. . . .
“(6) criminal activity by a tenant, any member of the tenant’s household, a guest or another person under the tenant’s control:
“(a) that threatens the health, safety, or right to *721 peaceful enjoyment of the premises by other residents (including property management staff residing on the premises); or
“(b) that threatens the health, safety, or right to peaceful enjoyment of their residences by persons residing in the immediate vicinity of the premises. ...
“(8) if the tenant is violating a condition of probation or parole under Federal or State law; . . .
“(10) if the Landlord determined that the tenant, any member of the tenant’s household, a guest or another person under the tenant’s control has engaged in criminal activity, regardless of whether the tenant, any member of the tenant’s household, a guest or another person under the tenant’s control has been arrested or convicted for such criminal activity.”
The one-strike policy addendum, as set forth in the notice, provides:
“A. Resident Conduct:
“1. Any criminal activity is grounds for eviction if it threatens the health, safety or right to peaceful enjoyment of the premises by other Residents.
“2. All drug related criminal activity, whether on or off the premises, is cause for eviction.
“3. A Residency may be terminated and the household evicted when the Resident, [any] member of the Resident’s household, or a guest engages in criminal activity described above. . . .
“B, Evictions:
“1. Drug related or criminal activity, in violation of this lease provision, will be treated as a serious violation of the material terms of this lease. The Housing Company will seek eviction, under appropriate laws and statutes of any Resident determined to be in violation of the material terms of this lease. . . .
“3. Resident, upon entering in the lease agreement, promise to abide by its terms. Resident[s] have an affirmative obligation to assure that neither they nor any member of their household, or guest, or anyone else under their control, by virtue of having been [invited] to the premises, will engage in prohibited drug related or other criminal activities. *722 The Housing Company may evict the entire household when a household member or guest commits a crime in violation of the lease provisions. The resident is responsible for the household.”
The crime free lease addendum, as set forth in the notice, states:
“Resident, any members of the resident’s household or a guest or other persons affiliated with the resident:
“1. Shall not engage in criminal activity, including drug-related criminal activity, on or near the said premises. ‘Drug related criminal activity’ means the illegal manufacture, sale, distribution, use, or possession with intent to manufacture, sell, distribute, or use an illegal controlled substance.
“2. Shall not engage in any act intended to facilitate criminal activity. . . .
“4. Shall not engage in the unlawful manufacturing, selling, using, storing, keeping, or giving of an illegal or controlled substance, at any locations, whether on or near the dwelling unit premises. . . .
“6. VIOLATION OF THE ABOVE PROVISIONS SHALL BE A MATERIAL AND IRREPERABLE VIOLATION OF THE LEASE AND GOOD CAUSE FOR IMMEDIATE TERMINATION OF TENANCY.”
The grounds for terminating the lease set forth in the notice are:
“PLEASE TAKE NOTICE that on July 10, 2012, Curel Patterson was arrested on charges of gang assault in the first degree, and assault in the third degree, for the assault, of Rhonda Smith, a tenant of Park Lake Residences. Additionally, on February 5, 2005, Curel Patterson was arrested for the stabbing of Rasheed Dillard, then a tenant of Park Lake Residences, resulting in charges of assault in the first degree. On that same occasion, you were also arrested for the assault of Taylor Shea, by ‘intentionally caus [ing] injury to the victim with the discharge of a firearm.’ On February 5, 2005, you were also arrested for several other charges. All these incidents constitute criminal activity in breach of the Lease, the Addendum, and the One-Strike Policy.”
*723 In support of the motion to dismiss, the affidavit of Lisa Patterson, sworn to March 9, 2016, is submitted. Respondent states she has lived at the premises for over 30 years. Her son, Curel Patterson, was a co-tenant until his incarceration in 2012. Respondent states that she recertified in October of 2012, 2013, 2014, and 2015. Respondent claims that she cannot be evicted for events that occurred almost four years ago, and about 12 years ago, as petitioner has waived its right to evict by these delays.
In opposition to the motion to dismiss, petitioner submits the affidavit of Judy Thomas (hereinafter referred to as Thomas), sworn to May 13, 2016. Thomas states that she is property manager and has held this position for over 10 years. She makes the following arguments (lettering does not match numbers in affidavit):
“(a) Curel was a member of Respondent’s household at the time of his arrest in July of 2012 and he signed the Crime Free Lease Addendum prior to his arrest.
“(b) Respondent’s Lease was recertified subsequent to the arrest and incident because:
“5. Management processed the Respondent’s annual recertifications subsequent to the arrest and incident in question simply because the recertifica-tions and renewals are required by law as a condition of the tenant’s occupancy at the Premises, a Project Based Section 8, building and as a requirement of her subsidy by HUD.
“6. CUREL was not removed from the subsequent recertifications simply because both the tenant and the landlord were uncertain as to whether CUREL would ultimately return to the premises and further, because both parties were awaiting the ultimate disposition of the criminal case that resulted from the incidents in question in 2012.
“7. Furthermore, Ms. PATTERSON, never attempted to remove CUREL from the household composition. As to the recertifications that happened prior to 2012, petitioner was simply unaware of the respondent’s extensive criminal activity dating back to 2005, upon learning of his extensive criminal record after the arrest in 2012, it became apparent that Ms. PATTERSON could not control *724 her son and the decision was made to start the instant case.
“8. Rather than lose her subsidy, the recertifica-tions were process the recertification [sic] with CUREL on the composition. Again, the recertifica-tions and renewals were only done because they are required by law as a requirement of the tenant’s occupancy and subsidy for the Subject Premises. Petitioner never knowingly acquiesced to the violations or intentionally ‘waived’ their right to terminate the tenancy due to the serious crimes that CUREL committed.”
Thomas states that respondent hasn’t paid rent since October 14, 2015. No rent was accepted from respondent after October 31, 2015 — the date set forth in the notice, and respondent owes $3,557. The court notes that respondent doesn’t deny receiving the governmental subsidy each month and depositing same.
Zachary Hall, Esq., submits his affirmation, dated May 13, 2016, in opposition to respondent’s motion. Attorney Hall states that the premises are a housing project regulated by HUD Section 8 Housing Program, subject to “HUD’s regulations, requirements and administrative guidelines.”
Counsel for petitioner states that respondent is being evicted because of the illegal activity set forth in the notice which constitutes a breach of the lease. Counsel makes reference to the Hempstead Police Department records concerning the arrest of Curel Patterson to bolster his case. The following describes the arrests of Curel Patterson:
a. July 10, 2012 — Gang assault with intent to cause physical injuries, when Curel Patterson, in concert with two other defendants, allegedly assaulted Rhonda Smith, who also resides at Park Lake.
b. September 6, 2005 — Possession and sale of crack cocaine.
c. February 28, 2005 — Curel Patterson was arrested for assault in the first degree and criminal possession of a knife after Curel Patterson, with another defendant, stabbed and seriously injured Rasheed Dillard, who was a tenant at Park Lake. This incident occurred in September of 2004.
d. February 28, 2005 — Arrested and charged with assault in the first degree, possession of a firearm and menacing after Curel fired a firearm causing serious injury to Taylor Shea, who was also a resident of Park Lake Residences, in June of 2003.
*725 e. March 10, 2003, Curel Patterson was arrested and charged with rioting for participating in a fight which occurred outside Hempstead High School.
Counsel states that respondent does not deny the facts regarding the arrests or that Curel was incarcerated and “remains in prison for the foregoing crimes.” However, counsel does not specify which crime Curel was convicted of that led to his incarceration.
Petitioner rejects respondent’s arguments that the summary proceeding must be dismissed due to the following:
1. predicate notice is defective/insufficient;
2. petitioner waived its right to bring this summary proceeding by providing a renewal lease after the incident;
3. petitioner accepted rent from the respondent after the notice was served, thereby vitiating the predicate notice.
The crime free lease addendum, dated October 9, 2013, is attached to the affirmation in opposition. This document was executed by respondent and petitioner. Curel Patterson’s name appears below the signature of petitioner, and he is listed as being incarcerated.
Petitioner attaches the letter dated January 3, 1991 from William G. Nichols, associate regional counsel for HUD Kansas City Regional Office, wherein he states that landlords cannot refuse to renew or recertify tenants’ leases until a court authorizes eviction:
“SUBJECT: Termination of Leases and Eviction— Continuation of Section 8 Existing Housing Rent and Utility Subsidies
“This letter is intended to address certain issues which you raised in your October 24, 1990, memorandum to Area Housing Authorities entitled ‘Termination of Leases’.
“As you know, termination of tenancy under the Section 8 Existing Certificate and Voucher Program is governed by 24 CFR 882.215(c). Counsel is of the opinion that these regulations do not authorize a public housing authority to discontinue a tenant’s rental and utility subsidies under the Section 8 Existing Housing Program until a court of competent jurisdiction has authorized the tenant’s eviction and the tenant’s appeal rights are exhausted. “Moreover, we agree with your memorandum when you state that ‘[Section 8] existing housing land *726 lords may not, under federal law, refuse to renew tenants’ leases without good cause and proper notice under the regulations.’ ”
Stephanie Cunningham, Esq., submits her reply affirmation, dated May 25, 2016, in support of the motion to dismiss. Counsel states that petitioner recertified respondent’s subsidy on October 7, 2015 to take effect December 1, 2015, and renewed the lease taking effect December 1, 2015 and terminating November 30, 2016. The lease was renewed for 10 years following the first alleged default in 2005. Counsel claims that petitioner has accepted a federal rental subsidy for over 10 years.
Based upon the foregoing, respondent argues: “9. Petitioner waived the alleged defaults by recertifying the subsidy, renewing leases and accepting rent, in the form of federal subsidies and payments from Respondent for over ten years following the first alleged default and over three years following the second alleged default.”
Respondent again reiterates that the termination notice is deficient. Furthermore, respondent maintains that any attempts to add new allegations of criminal activity not alleged in the termination notice are not permissible. Respondent also argues that since the subject premises were not used to further a criminal enterprise, the proceeding must be dismissed.
Decision
This court rules that a trial is mandated by the conflicting claims of both parties concerning whether waiver and/or estop-pel are warranted, to the extent provided herein.
The notice states that Curel Patterson allegedly committed gang assault in the first degree and assault in the third degree against Rhonda Smith, a tenant of Park Lake Residences, on July 10, 2012. This court holds that this portion of the notice complies with 24 CFR 247.4 (a) entitled “Termination notice” which states:
“Requisites of Termination Notice. The landlord’s determination to terminate the tenancy shall be in writing and shall: (1) State that the tenancy is terminated on a date specified therein; (2) state the reasons for the landlord’s action with enough specificity so as to enable the tenant to prepare a defense; (3) advise the tenant that if he or she remains in the leased unit on the date specified for *727 termination, the landlord may seek to enforce the termination only by bringing a judicial action, at which time the tenant may present a defense; and (4) be served on the tenant in the manner prescribed by paragraph (b) of this section.”
Petitioner provides enough specificity that Curel Patterson committed a crime against another tenant on July 10, 2012, which allows respondent to prepare a defense to this summary proceeding. Petitioner states the foregoing conduct violates paragraph 23 (c) of the lease, one-strike policy — criminal activity, and crime free lease addendum, all quoted above. The specificity of the alleged crime, and sections of the lease violated, comply with the requirements of 24 CFR 247.4. (See Khami v Martin, 13 Misc 3d 1207[A], 2006 NY Slip Op 51717[U] [2006].)
The instant notice is unlike the notice to terminate presented in Park Lake Residences, LP v Rustin (Nassau Dist Ct, index No. LT 2116/12), which held that the notice to terminate was defective because:
“Case law indicates that a notice to terminate shall be sufficiently particular, i.e. state a time, place, and identity of the person or persons having violated the lease (Escalera v. New York Housing Authority, 425 F2d 853 [2d Cir 1970], cert denied, 400 US 853 [1970]; Spivack Realty Co, Inc. v. Svobodny, 21 Misc3d 1147(A) [Nassau Dist Ct 2008]; cf. New Greenwich Gardens Associates, LLC v. Saunders, 23 Misc3d 521 [Nassau Dist Ct 2009].
“Upon a review of the notice to terminate, the Court finds that the notice does not comply with the requirements of 24 CFR § 247.4. The petitioner has failed to identify the individual who is alleged to have been smoking, loitering, smoking marijuana and damaging the building door. Furthermore, the petitioner failed to specify the dates of the alleged incidents and the time that said incidents occurred. These statements are not sufficiently particular to allow the respondent to interpose a defense.”
In Spivack Realty Co., Inc. v Svobodny (21 Misc 3d 1147[A], 2008 NY Slip Op 52543 [U] [Nassau Dist Ct 2008]), the court held that the notice to terminate failed to provide dates, times, names of tenants affected by the alleged nuisance and specific examples to support the alleged nuisance.
In New Greenwich Gardens Assoc., LLC v Saunders (23 Misc 3d 521 [Nassau Dist Ct 2009]), the court held that the notice to *728 terminate and notice to cure provided the respondent with enough specificity so that respondent could prepare a defense.
In the case at bar, respondent was informed of the specific date and crime which her son allegedly committed, which allows her to prepare a defense to this proceeding.
However, this court will not consider the claims presented in the notice that on February 5, 2005, Curel Patterson was arrested for the stabbing of Rasheed Dillard, a tenant of Park Lake Residences, that on the same occasion, Curel Patterson caused injury to Taylor Shea by the use of a firearm, and other general claims of criminal activity without specification.
Further, this court holds that the repeated certification of the rent subsidy and lease from 2005 until the present constitutes a waiver to assert these claims, even though petitioner didn’t intend to keep respondent as a tenant. (See 123 W. 15, LLC v Compton, 4 Misc 3d 138[A], 2004 NY Slip Op 50938[U] [App Term, 1st Dept 2004]; Kokot v Barton, 12 Misc 3d 614 [Civ Ct, NY County 2006].)
As stated by the court in 123 W. 15, LLC:
“A tenant should not be placed in the position of having to parse equivocal notices given by the landlord in renewal situations. Here, the tenant would reasonably have relied upon the latest expression of landlord’s intent — i.e., the offer of renewal, and would have had no cause to prepare to vacate or to defend legal proceedings.” (2004 NY Slip Op 50938[U], *2.)
A 10- to 11-year period of recertifying rent subsidies and lease renewals constitutes a waiver. (See Jefpaul Garage Corp. v Presbyterian Hosp. in City of N.Y., 61 NY2d 442 [1984]; Woollard v Schaffer Stores Co., 272 NY 304 [1936].)
Additionally, this court will not consider any other grounds not contained in the notice; any attempts to amend the notice are and will be denied. Reference to drug sales or possession of same (contained in petitioner’s attorney’s affirmation) and not contained in the notice cannot' constitute a basis to evict. (See Chinatown Apts. v Chu Cho Lam, 51 NY2d 786 [1980]; Spivack Realty Co., Inc. v Svobodny; Federal v Ortiz, 139 Misc 2d 274 [Civ Ct, Kings County 1988].)
This court will not dismiss this summary proceeding because issues of fact exist as to whether there was a waiver by petitioner by accepting rent, recertifying the rent subsidy and renewing the lease in 2013, 2014, 2015 and 2016. Respondent cites the foregoing as a basis for waiver.
*729 On the crime free lease addendum, dated October 9, 2013 (executed by respondent and petitioner) there appears the notation “Curel Patterson incarcerated 10/9/13.”
Petitioner responds that it never intended to waive any right to evict respondent by the certifications and lease renewals. In support, petitioner relies upon the affidavit of Judy Thomas, sworn to May 13, 2016, stating that Curel was not removed from the subsequent recertifications because “both parties were awaiting the ultimate disposition of the criminal case that resulted from the incidents' in question in 2012.”
There is validity to the petitioner’s argument that they are required to renew and recertify until there is a court decision authorizing respondent’s eviction. (See letter of associate regional counsel, dated Jan. 3, 1991, as set forth herein.)
This court agrees with Judge Dolan’s decision in Hempstead Hous. Auth. v Wells (155 Misc 2d 873 [Nassau Dist Ct 1992]), that a landlord’s acceptance of rent with knowledge of public housing tenant’s illegal drug activity does not waive, under the doctrine of laches, a tenant’s default under federal law. See also Greene Ave. Assoc. v Cardwell (191 Misc 2d 775, 790 [Civ Ct, Kings County 2002]), wherein the court stated:
“However, ‘[a] waiver may'not operate so as to infringe on the rights of others, or to violate public policy.’ (Hudsonview Co. v Jenkins, supra at 392 [illegal use]; Hempstead Hous. Auth. v Wells, 155 Misc 2d 873, 876-877 [Nassau Dist Ct 1992] [same]; Crossroads Apts. Assoc. v LeBoo, 152 Misc 2d 830 [Rochester City Ct 1991] [section 8/ ‘no pet clause’]; Mobil Oil Corp. v Burdo, 69 Misc 2d 153, 158 [Suffolk Dist Ct 1972].) ‘[T]he fraud perpetrated on the public is of such a serious nature as to justify eviction . . . Even if the landlord had wanted to, it could not have waived such breach even by express waiver.’ (Burdo at 158.) ‘[T]o hold that the owner’s inadvertent or deliberate acceptance of rent after commission of an illegal act could operate to waive the illegality . . . would be an open invitation to bribery or intimidation of a landlord or managing agent, or collusion between the parties to the detriment, of the community.’ (Hudsonview Co. v Jenkins, supra at 393.)”
The foregoing cases afford petitioner a reasonable period of time to commence summary proceedings after petitioner had knowledge of Curel Patterson’s conviction and sentence. For *730 example, if Curel Patterson were convicted and sentenced in 2013 and petitioner kept recertifying and renewing the lease and accepting rent for 2013, 2014 and 2015, without commencing summary proceedings against respondent, then the doctrines of estoppel and/or laches may be applicable. Petitioner may have to justify its delay and/or inaction in bringing summary proceedings.
However, the record is devoid of any facts as to how and when Curel Patterson was convicted (trial or plea of guilty) and was sentenced. Also, there is no proof presented as to why Curel Patterson was incarcerated. Moreover, although the notice states that Curel Patterson was arrested in 2012, there is no evidence as to whether this alleged crime was the basis for his incarceration.
Conclusion
Based upon the foregoing, a hearing/trial will be held on this matter on August 24, 2016, at 11:00 a.m. before the undersigned. This case is marked final.