The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:_____

Filing Date: December 30, 2025

**No. A-1-CA-42426**

**CITIBANK, N.A.,**

Plaintiff/Counterdefendant-Appellant,

v.

**LEANNE MOYER,**

Defendant/Counterclaimant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**James Lawrence Sanchez, District Court Judge**

Ballard Spahr LLP
Matthew A. Morr
Denver, CO

The Moore Law Group APC
Nicholas Bullock
Robert Gandara
Chad Morgan
Albuquerque, NM

for Appellant

Feferman, Warren & Mattison
Nicholas H. Mattison
Albuquerque, NM

for Appellee

**OPINION**

**YOHALEM, Judge**

{1}     Plaintiff Citibank, N.A. appeals the district court's order denying its motion to compel Defendant Leanne Moyer (Consumer) to arbitration and to stay the district court proceedings. The district court concluded that Citibank acted inconsistently with the terms of the parties' arbitration agreement, thereby excusing Consumer from her contractual obligation to arbitrate, and waiving Citibank's right to compel arbitration and stay the court proceedings. For the reasons stated below, we reverse and remand for entry of an order compelling arbitration and staying the district court proceedings in accordance with the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, the governing law adopted by the arbitration agreement.

**BACKGROUND**

**The Arbitration Agreement**

{2}     In 2022, Consumer opened a credit card account with Citibank in New Mexico for the purpose of buying consumer goods. The credit card contract contained an arbitration agreement (Agreement), which broadly covered "any claim, dispute[,] or controversy . . . arising out of or related to [Consumer's credit card a]ccount." The Agreement allowed either Consumer or Citibank to choose arbitration, even after a claim was first filed in court, and made the choice to arbitrate binding on both parties. The Agreement provided:

> This section provides that disputes may be resolved by binding arbitration. . . . This arbitration provision is governed by the [FAA], and shall be interpreted in the broadest way the law will allow.
>
> Covered Claims
>
>> You [(Consumer)] or we [(Citibank)] may arbitrate any claim, dispute or controversy between you and us arising out of or related to your [a]ccount, a previous related [a]ccount or our relationship (called "Claims").
>>
>> If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.

The Agreement informed Consumer that Citibank would file any debt collection action in court, but reiterated that the Consumer had a right to choose to arbitrate any claim filed by Citibank, "including Claims to collect a debt" even if the debt collection claim was first filed in court:

> We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us. . . . You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt.

Citibank also reserved the right to choose arbitration, including for a debt collection action, if the Consumer filed a claim or counterclaim against Citibank:

> If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you.

The Agreement provided that either party may choose to arbitrate by filing a motion to compel arbitration in court "and/or" by filing a request for arbitration with the American Arbitration Association (AAA) and paying the AAA's filing fee:

2

> To choose arbitration, a party may file a motion to compel arbitration in a pending matter and/or commence arbitration by submitting the required AAA forms and requisite filing fees to the AAA.

Finally, the Agreement provided a broad range of time during which either party could exercise their right to choose arbitration, specifying that neither party waived their right to arbitrate "by filing or serving a complaint, answer, counterclaim, motion or discovery in a court lawsuit." Only the commencement of trial in court or entry of a judgment by the court would waive the right to choose arbitration:

> Arbitration may be requested at any time, even where there is a pending lawsuit, unless a trial has begun or a final judgment entered. Neither you nor we waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion or discovery in a court lawsuit.

**The Relevant Facts and Proceedings**

{3}     On November 15, 2023, Citibank filed this debt collection action in district court in New Mexico (where Consumer resided) seeking to collect $3,369.87 that Citibank claimed Consumer owed on her Citibank credit card account. On December 19, 2023, the district court issued a summons for service of the complaint on Consumer at her New Mexico residence.

{4}     On January 23, 2024, before the complaint was served on Consumer and apparently before Consumer had notice that Citibank filed its complaint, Consumer, with the assistance of Colorado counsel, filed a demand for arbitration with the Colorado AAA. Consumer's arbitration demand alleged a violation of the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, and of a similar Colorado statute, Colo.

Rev. Stat. Ann. § 5-5-109 (West 2000) of the Colorado Consumer Credit Code. It is undisputed that all of Consumer's claims were related to the debt that Citibank sought to collect in the New Mexico litigation and that all of the claims asserted by both parties were arbitrable under the Agreement.

{5}     Consumer served Citibank notice of the Colorado AAA arbitration demand by United States mail on January 23, 2024. The AAA informed both parties by email on February 6, 2024, two weeks after Consumer filed her AAA demand, that (1) the parties had met all filing requirements, (2) the AAA would appoint a case manager, and (3) the parties would receive an "initiation letter" from the case manager regarding scheduling. Although the date is not clear from the documents in the record, counsel for Citibank had entered an appearance in the AAA arbitration proceeding.

{6}     Citibank served Consumer with the New Mexico summons and complaint at her New Mexico address on February 7, 2024. Consumer immediately hired New Mexico counsel and on February 14, 2024—one week after being served—filed an answer to the complaint in district court in New Mexico, together with nine counterclaims, and a jury demand. Consumer's counterclaims included tortious debt collection, malicious abuse of process, intentional infliction of emotional distress, breach of contract, breach of the covenant of good faith and fair dealing, conversion, violation of the federal Fair Credit Reporting Act, violation of the federal Truth in

4

Lending Act, and violation of the New Mexico Unfair Practices Act. Only one of Consumer's nine counterclaims, her federal Fair Credit Reporting Act claim, had been raised previously in Consumer's Colorado demand for arbitration.

**{7}** Consumer then filed a request with the AAA to withdraw the pending Colorado AAA arbitration proceeding. On February 20, 2024, the AAA sent a notice to the parties informing them that the arbitration proceeding had been closed. There is no mention in the record of any communication between Consumer's and Citibank's counsel, other than the formal service or notice of these filings, and we assume none occurred.

**{8}** On or about March 15, 2024, within the thirty-day time to reply to counterclaims under New Mexico's Rules of Civil Procedure, Rule 1-012(A) NMRA, Citibank filed in district court a motion entitled, "Motion to Compel Arbitration and Stay Proceedings," under § 3 and § 4 of the FAA. *See* 9 U.S.C. §§ 3, 4.

**{9}** Citibank's motion informed the district court that the Agreement "broadly encompasses 'any claim, dispute, or controversy'" between the parties "'relating to' the [a]ccount or [Consumer's] relationship with Citibank," a description that plainly includes Citibank's debt collection claim, and asked the district court, "pursuant to the FAA and Supreme Court precedent," to grant its motion to compel and to stay

5

because "the parties should be compelled to arbitration, and the action should be stayed . . . pending completion of the arbitration."

{10} Consumer filed a response in opposition, arguing that Citibank "not only served this lawsuit and refused to dismiss it, but [Citibank] also filed its [m]otion to [c]ompel [a]rbitration, explicitly asking the [c]ourt to force [Consumer's] claims into arbitration while [Citibank] continues to pursue its claims in [c]ourt." Consumer argued that Citibank "g[ave] up any right to arbitrate the parties' dispute" because its actions constituted a breach of the Agreement and because it waived its right to arbitrate.

{11} At the October 9, 2024, hearing on Citibank's motion to compel arbitration and for a stay, the district court asked about Consumer's contention that the motion sought to compel arbitration of Consumer's counterclaims, while reserving Citibank's right to pursue its collection action in district court. Consumer relied on quotations from Citibank's motion to compel arbitration, in which Citibank asked the court to find that there had been no breach or waiver of the Agreement by Citibank, and to compel Consumer to arbitrate her counterclaims.

{12} Consumer then turned to Citibank's request to stay the proceedings, again arguing that by seeking to stay the action, rather than dismissing its collections claim outright, Citibank wanted "[Consumer] to be forced to arbitrate our counterclaims, but [Citibank does] not want [the district c]ourt to send [its] claim to arbitration."

6

{13} Citibank responded by explaining that it was seeking a stay of the proceedings while all arbitrable claims are resolved through arbitration. Citibank acknowledged that its debt collection claim was arbitrable under the Agreement, as well as all of Consumer's counterclaims. Citibank explained that it had no intention of litigating its collections claim, and told the court that it was seeking a stay of the proceedings, rather than dismissal, because § 3 of the FAA authorizes a stay of the proceedings sent to arbitration in order to protect the party seeking arbitration against a subsequent refusal to arbitrate or withdrawal from arbitration by the opposing party. Citibank pointed out that Consumer had already once filed for arbitration, and then unilaterally had withdrawn her request.

{14} The district court denied Citibank's motion to compel arbitration and to stay the court proceedings on the grounds that Citibank's "conduct is inconsistent with the [Agreement] and constitutes a waiver of the right to arbitrate." Citibank appealed.

**DISCUSSION**

{15} This appeal requires this Court to determine whether the district court erred in concluding that Citibank's conduct in this case amounted to either a refusal to arbitrate—which would be a material breach of the Agreement—or a waiver of its right to arbitrate, either of which would support a denial of Citibank's motion to compel under the FAA. In order to answer this question, we first address the

principles of both federal and state law that the district court is bound to apply, and then address our standard of review, before turning to the application of this law and standard of review to the facts concerning Consumer's breach of contract and waiver claims.

**I.      The Legal Framework to Compel Arbitration Under the FAA**

{16}     The Agreement states on its face that it "is governed by the [FAA]." The parties do not dispute that their choice of the FAA as the law governing enforcement of the Agreement must be honored both in the district court and on appeal. *See Fiser v. Dell Comput. Corp.*, 2008-NMSC-046, ¶ 7, 144 N.M. 464, 188 P.3d 1215 ("New Mexico respects party autonomy; the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision."). We agree that the parties' choice of law governs and that the FAA, rather than the New Mexico Uniform Arbitration Act, applies. We therefore review the district court's decision under the terms of the FAA.

{17}     The FAA provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in [§] 4." 9 U.S.C. § 2. Section 4 of the FAA, which addresses motions to compel arbitration, directs the district court to grant such a motion and compel the parties to arbitration on *all claims the parties have agreed to arbitrate*, with the sole noted exception that the

8

court must be satisfied "that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *See* 9 U.S.C. § 4. Section 4 of the FAA acknowledges the court's authority to deny a motion to compel arbitration and proceed with the litigation if the court concludes that there has been a failure to comply with the arbitration agreement by the party seeking to compel arbitration (here Citibank). *See id.* (stating that a district court shall grant a motion to compel arbitration so long as "failure to comply" with the agreement is not in issue). Section 4 provides for a summary trial if the facts concerning compliance are in dispute.

{18}     Section 3 of the FAA, concerning stay of the proceedings when arbitration is compelled, is read together with § 4. *Cf. Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 201 (1956) (reading the provisions of the FAA together because they "are integral parts of a whole" and "part of the [same] regulatory scheme"). Section 3 provides that, if a court compels arbitration, it should also stay the court proceedings "until such arbitration has been had in accordance with the terms of the agreement [to arbitrate]." *See* 9 U.S.C. § 3. Section 3, like § 4, makes an exception to the court's duty to stay the action pending arbitration if the applicant for the stay is "in default in proceeding with such arbitration." *Id.*

{19}     Both the United State Supreme Court and the New Mexico Supreme Court have held that the FAA's exceptions to the district court's duty to compel arbitration and to stay the proceedings incorporate state common law contract grounds for

revoking or refusing to enforce a contract. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010) (stating that arbitration contracts may be invalidated by "generally applicable contract defenses"); *Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 49, 304 P.3d 409 (holding that a court may, consistent with the FAA, "invalidate an arbitration agreement through the application of an existing common law contract defense"). These provisions of the FAA provide the authority for the district court's reliance on the common law contract defenses of material breach of contract and waiver of a contractual right to deny Citibank's motion to compel arbitration.

{20} As we have already noted, the parties agree that all of the issues raised before the district court including Citibank's debt collection claim, as well as all of Consumer's federal statutory, state statutory, and state common law counterclaims, are arbitrable under the terms of the Agreement. The dispute between the parties, therefore, focuses solely on Consumer's contention that Citibank refused to honor Consumer's choice of arbitration, proceeding with this litigation after Consumer chose arbitration. Consumer argues that Citibank's conduct both materially breached the Agreement, relieving Consumer of her contractual obligation to arbitrate her counterclaims, and also waived Citibank's right to arbitration under state waiver law.

{21} We address the parties' choice of the law to govern the breach of contract and waiver defenses before proceeding to address our standard of review and finally each of Consumer's contract defenses in turn.

## II. Choice of State Law

{22} Although neither party provides developed briefing on the choice of state substantive law to govern the contract defenses raised on appeal, it is a preliminary question we must address before proceeding to the merits of the parties' breach of contract and waiver arguments. The credit card contract includes a general choice of law provision, which provides that "[f]ederal law and the law of South Dakota govern the terms and enforcement of this [credit card agreement]."

{23} The Agreement states explicitly that it is governed by the FAA. As already noted, there is no disagreement about the application of the FAA to the proceedings in district court to enforce the Agreement.

{24} South Dakota contract law is the parties' choice of substantive law to apply to the merits of Consumer's breach of contract and waiver defenses. In a footnote in her brief on appeal, Consumer states that she does not concede that South Dakota contract law applies to her breach of contract and waiver defenses, but provides no grounds or authority for her objection. Without developed argument and authority for a different choice of law, we honor the plain language of the parties' agreement

11

and apply South Dakota's substantive law of contract. *See Fiser*, 2008-NMSC-046, ¶ 7 (holding that New Mexico honors the parties' choice of law).

**III. Standard of Review**

{25} We review a grant or denial of a motion to compel arbitration de novo. *See Heye v. Am. Golf Corp.*, 2003-NMCA-138, ¶ 4, 134 N.M. 558, 80 P.3d 495.[1] Where the question raised on appeal from the grant or denial of a motion to compel arbitration is whether a party has refused or failed to arbitrate, materially violating the terms of the arbitration agreement, or waived its right to arbitration, this Court has concluded that "when the underlying facts are not in dispute, the question of whether a party has waived its right to arbitration is a legal matter subject to de novo review." *See Am. Fed'n of State, Cnty. & Mun. Emps. v. City of Albuquerque*, 2013-NMCA-049, ¶ 8, 299 P.3d 441. South Dakota applies the same principles. *See W.J. Bachman Mech. Sheetmetal Co. v. Wal-Mart Real Est. Bus. Tr.*, 2009 S.D. 25, ¶ 12, 764 N.W.2d 722.

{26} The dispositive facts here are undisputed. We note that the district court did not treat the issues raised as questions of fact requiring summary trial under § 4 of the FAA, did not take evidence, and did not make findings of fact. Our review is

---

[1]Section 6 of the FAA provides that the forum state's procedural rules apply to motions filed under the FAA. *See Martinez v. Melloy Bros., Inc.*, \_\_\_-NMCA-\_\_\_, ¶ 20 n.5, \_\_\_ P.3d \_\_\_ (A-1-CA-41818, Sep. 18, 2025) (holding that New Mexico's appellate rules of finality are not preempted by the FAA).

therefore de novo. Although the parties agree that our review is de novo, they take conflicting positions on the effect of federal policy under the FAA on our application of state law contract principles. Citibank argues that the state law contract defenses at issue here must be viewed by this Court through the lens of FAA policy, which, according to Citibank, strongly favors the resolution of disputes by arbitration. Consumer argues in response that arbitration contracts should not be favored, but rather should be construed applying the principles applicable to other contracts. We agree with Consumer that the FAA does not require the application of a special preference favoring arbitration in construing a contract to arbitrate. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 418-19 (2022). An agreement to arbitrate is enforced under the state law that governs all contracts, on a level playing field with other contracts. *See id.* We therefore do not favor arbitration over litigation in our analysis of the issues in this case, but strive to fairly apply state contract law, holding the parties to the terms of the Agreement, just as we would any other contract.

{27}     With that principle in mind, we address first the district court's determination that Citibank's conduct breached the Agreement, and then turn to the application of the law of waiver to Citibank's conduct.

**IV.     Citibank Did Not Breach the Agreement**

{28}     The district court denied Citibank's motion to compel arbitration based on the court's conclusion that Citibank acted inconsistently with its right to arbitration by

continuing to pursue its debt collection claim in district court after receiving notice that Consumer had filed a demand for arbitration with the Colorado AAA. Both parties on appeal treat the district court's somewhat ambiguous decision as a determination that Citibank both breached the Agreement and waived its right to enforce the Agreement. We, therefore, adopt this construction of the court's decision and separately address the parties' arguments on breach of contract and waiver.

**A.** **Governing Law on Breach of Contract**

{29} The common law of contract in South Dakota recognizes that a breach of contract, when it is so substantial that it tends to defeat the object of the contract, excuses the nonbreaching party from further performance under that contract. *See FB & I Bldg. Prods., Inc. v. Superior Truss & Components, a Div. of Banks Lumber, Inc.*, 2007 S.D. 13, ¶ 15, 727 N.W.2d 474. Consumer relies on two federal cases, *Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005) and *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287 (10th Cir. 2015), both of which treat the failure of a party to participate in arbitration as a breach of the agreement to arbitrate, excusing the nonbreaching party from further performance under that agreement. *See Brown*, 430 F.3d at 1012; *Cahill*, 786 F.3d at 1294. *Brown* and *Cahill* both grant the nonbreaching party's request to allow the case to proceed in court. *See Brown*, 430 F.3d at 1013; *Cahill*, 786 F.3d at 1299.

## B. Citibank Did Not Breach the Agreement

{30}    We turn to Consumer's claim that Citibank breached the Agreement. The term of the Agreement that Consumer claims Citibank breached in this case states as follows:

> If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.

{31}    Consumer claims that Citibank breached the Agreement by failing to *immediately* dismiss its properly filed district court complaint when Consumer filed her demand for arbitration with the Colorado AAA.[2] Consumer construes Citibank's service of the complaint, followed by a motion to compel arbitration and stay the court proceedings, as "proceeding with the litigation," and refusing to arbitrate Citibank's debt collection claim when Consumer chose arbitration.

{32}    In support of her argument, Consumer first turns to the language of Citibank's motion to compel and to stay. She argues that by asking the district court to compel arbitration of Consumer's counterclaims without mentioning its own claim, Citibank was implicitly asking the court to preserve its own debt collection claim for trial in the district court. Consumer alleges that "[o]nce the arbitration was complete, the

---

[2]We note that Consumer does not contend that Citibank refused to participate in the arbitration by failing to pay arbitration-related expenses or by not responding to AAA's communications. The record shows that Citibank's counsel entered an appearance in the Colorado arbitration and that the AAA instructed both parties to await a scheduling letter from the AAA.

15

stay [Citibank requested in its motion] could be lifted to allow Citibank to proceed in [d]istrict [c]ourt with its claims."

{33} We are not persuaded that Citibank's service on Consumer of its properly filed complaint, followed by the filing of a timely motion to compel arbitration and to stay the proceedings under the FAA, can be construed as a refusal to arbitrate. Consumer's argument fails to account for the fact that during the hearing on Citibank's motion to compel arbitration, Citibank's counsel stated, "We understand that if the matter gets sent to arbitration, *our claims and her claims* will be disputed at arbitration." Just as importantly, Consumer's argument fails to consider the terms of the FAA, the law chosen by the parties to govern court oversight of the Agreement.

{34} Under the FAA, Citibank's service of the complaint, followed by a request to the court to compel arbitration and stay the proceedings pending completion of the arbitration, is entirely consistent with Citibank's intent to proceed with the arbitration of all claims, including its own. The FAA charges courts with the construction and enforcement of agreements to arbitrate, with resolving disputes concerning arbitration, with overseeing and facilitating arbitration, with compelling reluctant parties to arbitration, and with approving and enforcing the arbitrator's decision. Requiring immediate dismissal of a court proceeding when arbitration is

16

chosen, rather than the filing of a motion to compel arbitration and to stay the proceedings, would unnecessarily limit the role the FAA gives to the court.

{35}    Consumer's claim that Citibank's motion to compel sought to compel only Consumer's counterclaims to arbitration and reserve Citibank's debt collection claim for resolution in court overlooks the plain language of § 4 of the FAA. Section 4 provides that when a motion to compel arbitration is filed, the court is required to refer to arbitration *all of the claims that are arbitrable* under the parties' arbitration agreement. *See id.* ("[T]he court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."). In order to exempt its own claim from referral to arbitration under § 4, Citibank would have had to argue that its claim was not arbitrable and obtain a decision from the court. Citibank instead conceded that its debt collections claim was arbitrable, moved to compel arbitration as provided for by § 4, and acknowledged that its claims would also be resolved through arbitration. *See id.* (authorizing "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition the court "for an order directing that such arbitration proceed in the manner provided for in such agreement").

{36}    Consumer's argument also misunderstands the purpose of § 3, which allows the court to stay the proceedings pending arbitration. As the United States Supreme Court has noted, when requested, a stay of court proceedings under § 3 of the FAA

while claims are arbitrated "ensures that the parties can return to federal court if arbitration breaks down or fails to resolve the dispute." *Smith v. Spizzirri*, 601 U.S. 472, 477 (2024). This is the very reason given by Citibank for requesting a stay of proceedings during which *all* claims, including its claim, are arbitrated.

{37} The procedure followed by Citibank in serving its complaint and filing a motion to compel arbitration and to stay the proceedings was a reasonable way under the FAA for Citibank to comply with Consumer's choice of arbitration, and to enforce its own right to choose arbitration for both parties' claims after Consumer unilaterally withdrew her Colorado arbitration demand. It was nothing like the outright refusal to comply with a condition necessary for arbitration found in *Brown* and *Cahill*, to be a breach of the parties' agreements to arbitrate. We conclude that Citibank did not breach the Agreement and that Consumer, therefore, was not relieved of her obligation to comply.

## V. Citibank Did Not Waive its Right to Arbitrate

{38} We next address whether Citibank waived its right to arbitrate under state common law contract principles. Consumer claimed in district court, and now on appeal, that Citibank waived its right to arbitrate by continuing to litigate in district court despite Consumer choosing to arbitrate by filing with the Colorado AAA. Consumer relies on the same conduct she claims was a breach of the Agreement to support her waiver argument.

18

{39} Consumer argues preliminarily that the United States Supreme Court's opinion in *Morgan*, 596 U.S. at 413-14, requires this Court to modify the special state law contract analysis that has long been applied by South Dakota to claims of waiver of an agreement to arbitrate. South Dakota's special waiver analysis adds a requirement for arbitration agreements not applied to other contracts, requiring proof of prejudice to the party claiming waiver. *See Rossi Fine Jewelers, Inc. v. Gunderson*, 2002 SD 82, ¶ 9, 648 N.W.2d 812. We agree with Consumer that, because the FAA governs the enforcement of the Agreement, we are required to follow *Morgan* and apply South Dakota's general contract law of waiver, which does not require a showing of prejudice.

{40} We note that our Supreme Court has not addressed the application of *Morgan* to New Mexico's arbitration-specific waiver rule. *See Bd. of Educ. Taos Mun. Schs. v. Architects, Taos*, 1985-NMSC-102, ¶¶ 8-9, 103 N.M. 462, 709 P.2d 184 (adopting an arbitration-specific rule). That arbitration-specific rule would, therefore, bind this Court if we were applying New Mexico precedent under our Uniform Arbitration Act to the waiver question. *See State v. Mares*, 2024-NMSC-002, ¶ 34, 543 P.3d 1198 (stating that vertical stare decisis "requires that the Court of Appeals follow [the New Mexico Supreme Court] precedent even when a United States Supreme Court decision seems contra . . . or when the Court of Appeals determines that [the New Mexico Supreme Court] would conclude that the precedent is no longer good

19

law and would overrule it given the opportunity" (internal quotation marks and citation omitted)). However, the controlling precedent in this case is not a decision of our Supreme Court because the Agreement does not adopt New Mexico law. It says that the FAA and South Dakota law apply, and we therefore apply *Morgan* as United States Supreme Court precedent interpreting the FAA, together with South Dakota's general law of contract waiver.

{41}     The general doctrine of waiver of a right under a contract applies "if the party in possession of any right does or forebears the doing of something inconsistent with the exercise of the right. To support the defense of waiver [under South Dakota contract law], there must be a showing of a clear, unequivocal and decisive act or acts showing an intention to relinquish the existing right." *Northland Cap. Fin. Servs., LLC v. Robinson*, 2022 S.D. 32, ¶ 19, 976 N.W.2d 252 (internal quotation marks and citation omitted). "A waiver of a contractual right occurs where one in possession of any contractual right . . . and [in possession] of full knowledge of the material facts, does or forbears the doing of something inconsistent with the existence of the right or of [their] intention to rely upon it." *A-G-E Corp. v. State*, 2006 S.D. 66, ¶ 22, 719 N.W.2d 780 (alteration, internal quotation marks, and citation omitted).

{42}     As we have already noted, Consumer relies on the same conduct by Citibank in claiming waiver as she relied on to claim breach of contract. The sole difference

between the two arguments is Consumer's focus in her waiver argument on how Citibank's conduct showed an intention to relinquish its right to arbitration. Consumer argues that "[t]here could hardly be a clearer action in contradiction of the right to arbitrate than proceeding with a lawsuit despite the other party's initiation of an AAA arbitration." We do not agree that Citibank's conduct can properly be described as proceeding with a lawsuit despite Consumer's election to arbitrate.

{43} Consumer acknowledges that the Agreement specifically provides that neither the filing of a lawsuit nor the service of pleadings in that lawsuit will waive that party's right to arbitration: "Neither [Defendant] nor [Citibank] waive[s] the right to arbitrate by filing *or serving* a complaint, answer, counterclaim, motion or discovery in a court lawsuit." Consumer does not explain why the plain language of this provision does not foreclose her claim that Citibank waived its right to arbitrate via service of the complaint and filing the motion to compel and to stay. The focus of South Dakota's general contract law of waiver is on the conduct of the party in possession of the right. Consumer must point to actions *by Citibank* that clearly, unequivocally, and decisively show "an intention to relinquish [an] existing right." *See Northland Cap. Fin. Servs.*, 2022 S.D. 32, ¶ 19. She has not done so.

{44} For substantially the same reasons described in our analysis of Consumer's breach of contract claim, we hold that Citibank's actions were not inconsistent with the Agreement and did not clearly and decisively show an intention to relinquish its

right to arbitrate. Serving its already filed complaint, while at the same time its counsel entered an appearance in the Colorado arbitration proceeding, is entirely consistent with an intent to arbitrate all of the arbitrable claims. Following the FAA and asking the court to stay the entire proceedings while arbitration proceeds does not indicate an intent to relinquish the right to arbitration. The district court having concluded otherwise, we reverse.

**CONCLUSION**

{45}    For the reasons stated above, we reverse the district court's order denying Citibank's motion to stay the district court proceedings and to compel the parties to resolve their disputes through arbitration. We remand to allow the district court to compel arbitration and to stay the court proceedings.

{46}    **IT IS SO ORDERED.**

_____
**JANE B. YOHALEM, Judge**

**WE CONCUR:**

_____
**ZACHARY A. IVES, Judge**

_____
**KATHERINE A. WRAY, Judge**

22